CALVIN B. BENNETT *v.* HENRY BENNETT, JR., ET AL.

1. PARTITION. *Accounting. Improvements. Rents. Taxes. Lien.*
   In a suit for partition of land:
   (*a*) An occupying tenant in common is not liable to his co-tenants for rents, unless he has occupied more than his proportionate share of the land, and then only for the rent of the excess.
   (*b*) A tenant in common is entitled to the cost of valuable, permanent, and not ornamental improvements put by him on the land in excess of his proportionate part thereof.
   (*c*) A tenant in common is entitled to a lien on the shares of his co-tenants in the land for taxes paid by him beyond his proportionate share, and for any sum due him for improvements or rent from his co-tenants.
   (*d*) A tenant in common who has improved a portion of the land equal in area to his proportionate share on partition in kind should have the same allotted to him.
   (*e*) A tenant in common who has improved a portion of the land of greater value than his proportionate share, is entitled to have the same allotted to him upon partition in kind, subject to contribution by him to his co-tenants.
   (*f*) If the enquiry as to rents go behind the death of one under whom the co-tenants claim, an administrator of his estate may be made a party, unless administration be unnecessary.

FROM the chancery court of, first district, Coahoma county.

HON. CAREY C. MOODY, Chancellor.

Henry Bennett, Jr., and others, appellees, were complainants in the court below; Calvin B. Bennett, appellant, was defendant there. From a decree in favor of the complainants the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*Fitzgerald, Maynard & Fitzgerald,* for appellant.

The proof is clear and positive that appellant paid $43.05 of the purchase money, while his brother, Henry Bennett, only paid $15 thereof, assigning as his reason that $15 would buy all

the interest he wanted in the land.   He knew after he returned from his seven years' residence in Missouri before then that appellant was claiming at least to own the ninety acres he had improved, and he raised no objection to it.   His children bring the suit after the death of their father, knowing appellant could not testify against his estate, and hoping he would fail to prove by other witnesses the facts in the case.   The house appellees are living in now was built by appellant and at his expense. But for appellant the land would have been sold for taxes and lost to the owners, for appellees' ancestor refused to pay them, saying he did not want the land.   It would all now be wild land, and producing no revenue, but for the industry of appellant.

The plea of statute of limitations interposed by appellees against the claim of appellant for more than a half interest in the lands in controversy, is not good.   Our contention is, we already have the legal title in our client for all the interest he has in the land, and that his interest is an undivided forty-three fifty-eighths part.   While upon the face of the deed it appears that appellant and Henry Bennett owned each an undivided one-half interest in the land, yet it can always be shown by oral proof what interest in fact is owned.   There is no question of resulting trust in this case, because the legal title is not in Henry Bennett to any of appellant's actual interest in the land.

The plea is not good for two other reasons: Because Henry Bennett never claimed to own more than an undivided fifteen fifty-eighths interest in the land, having said $15 would buy all the interest he wanted, and appellees are estopped from now saying he did claim a larger interest.   And because Henry Bennett was absent from and residing out of the state for seven years of the period during which appellees claim the statute was running.   This statute does not run during the absence of the party to be sued from the state.

The decree in this case is erroneous in ordering the commissioners to set off to appellant a half interest, instead of a

forty-three fifty-eighths part. Besides, the decree, in compelling appellant to account for rents and profits, when he has neither received rents nor profits from third persons, nor been guilty of any ouster or exclusion of his co-tenant, involves manifest injustice, and is contrary to the weight of authority.

By the common law a co-tenant, though in possession of the whole property, whether he used it himself, and thereby received advantages and profits, or let it to his tenants, who paid him rents, was not answerable to his co-tenant for the advantages enjoyed or rents actually received. To be so answerable, there must have been some agreement expressed or implied to pay rents, or to pay for such use and occupancy. Freeman on Co-tenancy & Partition, sec. 269; *Ward* v. *Ward,* 52 Am. St. Rep., 924, and authorities cited.

The English statute, 4 and 5 Anne, ch. 16, modified the common law by creating a liability against a co-tenant "for receiving more than comes to his just share and proportion."

It has been held by a number of courts of high authority in the United States that a co-tenant in exclusive use and possession of the common property cannot be regarded as asserting any right to which he is not entitled; and where the common law still prevails, and where it has not been modified by statutory provisions of import similar to the statutes of Anne, he is not answerable to his co-tenant merely for using more than his proportion of the common property, although realizing profits from such use. *Ward* v. *Ward,* 52 Am. St. Rep., 926, and authorities cited.

Under no conditions should the court below have decreed rents against appellant which accrued prior to the death of Henry Bennett and for the year of his death. There can be no controversy about such rents belonging to the administrator of decedent. Code 1892, § 1881.

In partition of lands between tenants in common, one of whom has made improvements thereon, the equitable rule is to assign to the improver that part upon which he has made the

improvements, unless manifest injustice is done thereby to his fellow-tenant. As put by Chief Justice George, in delivering the opinion in *Paddock* v. *Shields,* 57 Miss., 341, "a co-tenant who has improved part of the common property is entitled to the improved part, or, if that will injure the other co-tenants, to have compensation in money."

*J. W. Cutrer,* for appellees.

By the terms of the deed from the state each of the parties was vested with an equal interest in the land described therein.

The appellant seeks to assert an interest in the property beyond and in addition to the calls of the deed to his brother and himself, and to show that, while the deed vests him with one-half interest in the property conveyed thereby, he holds a further interest to the extent of fourteen fifty-eighths of the interest or title vested in the ancestor of the appellees.

There was no mistake in the execution of the deed, within the meaning of equity, which could be the occasion of jurisdiction for a court of equity, superinduced by an erroneous mental condition arising out of ignorance or a misunderstanding of the truth, but without negligence. There was, if anything, a mistake of law, pure and simple, and it is more than certain that this is not adequate ground for relief. 2 Pomeroy Eq. Jur., secs. 839-842.

Courts will not enforce a resulting trust after the lapse of a considerable time, or laches on the part of the supposed *cestui que* trust. *Smith* v. *Patton,* 12 W. Va., 541; *King* v. *Purdee,* 6 Otto, 90; *Douglass* v. *Lucas,* 63 Pa. St., 11; *Hall* v. *Doran,* 13 Iowa, 368; *Midmer* v. *Midmer,* 26 N. J. Eq., 299; *Miller* v. *Blose,* 30 Gratt (Va.), 744.

To enforce the application of this rule the legislature has long since seen fit to enact statutes of limitation, which interpose a bar to the assertion of all trusts and equitable claims, except express trusts. Code 1892, § § 2731, 2763.

The very marrow of the appellant's case is the assertion by him of a right to hold more than the deed to him calls for. It is the assertion of a stale claim delayed of assertion until long after the death of one of the principal actors in the transaction, and after all *bona fide* witnesses thereto have passed away, or have forgotten the details thereof.

The decree directs the partition to be made as is provided by the statute. The accounting ordered is also strictly in line with the rule recognized as prevailing in Mississippi.

The commissioners appointed to make the partition are directed to make the allotments without balloting, so that the commissioners can make such allotments as in their judgment will best subserve and preserve the interests and equities of the parties.

The accounting for rents is to be had in connection with an accounting on behalf of the appellant for the improvements made by him upon the land and the taxes which he has paid. It would be inequitable, so far as the appellees are concerned, to give the appellant the benefit of all the improvements he has made and of all the taxes he has paid without at the same time charging him up as an equitable set-off with the proportion of the rents and profits of the property which he has received in excess of his portion thereof. Therefore, it is not an objection to the decree for the accounting as to rents accrued prior to the death of Henry Bennett, that the personal representative of his estate is not a party.

CALHOON, J., delivered the opinion of the court.

Henry Bennett, Jr., and his brother and sister, the appellees, who are minors, by their next friend, set up in their bill below that they are the only children and heirs of Henry Bennett, deceased, who died March 3, 1900; that he died the owner of an undivided one-half interest in a tract of 160 acres of land described, the other half belonging to C. B. Bennett, the appellant; that their deceased father and the appellant got title from

the state in 1892, and that those two were in possession when
Henry died as tenants in common, but that now C. B. Bennett
is in possession of the whole tract, and denies that Henry's heirs,
the appellees here, have any interest at all; that C. B. Bennett
got the whole crop of 1900 and 1901, and refuses any compen-
sation for use and occupation; that ninety acres were in culti-
vation during these years, for which six dollars per acre was a
reasonable rental value; that partition should be made, and com-
plainants pray for it, and for solicitor's fee, and account for the
use and occupation, etc.   C. B. Bennett answers, admitting the
tenancy in common, but denying that the shares were equal,
denying his use of any more than his proportionate share, and
denying that he ever prevented decedent or his heirs from using
their share.   By cross-bill he charges that he and deceased bought
the land from the state on May 16, 1887, for $58.05, of which
he paid $43.05, and decedent only $15, thus entitling him to
118.62 acres, and the decedent to 44.38 acres; that he cleared
and put all the improvements on the ninety acres at a cost of at
least $10 per acre, and that he has paid all the taxes on the whole
tract since the purchase, aggregating $546.33; and he prays
equitable adjustment in any partition, and that the improved
part be allotted to him, etc.   The answer to the cross-bill denies
the inequality of contribution to the purchase price to the state;
denies the complainants were not excluded from the land, and
says they were excluded by C. B. Bennett from the whole tract;
denies that C. B. Bennett paid all the taxes; set up a half inter-
est in all, improved and unimproved, and the ten years statute
of limitations to C. B. Bennett's claim.   The conveyance from
the state is for the expressed consideration of $58.05, is dated
May 16, 1887, and is "to Henry and C. B. Bennett."   It is es-
tablished, without contradiction, that Henry never paid a cent of
the taxes; that C. B. Bennett paid them all from the beginning,
the gross amount being $546.33; and that C. B. Bennett did all
the clearing and erected all the buildings, even to the very house
occupied by Henry's family.   No lack of harmony appears in

the relations between Henry and C. B. Bennett while Henry lived, and, while on the land, he lived in a house built by C. B. Bennett, and worked fifteen or twenty acres of land cleared by C. B. Bennett. There is no evidence whatever of any ouster by C. B. Bennett of Henry or complainants.

The decree which is appealed from by C. B. Bennett to settle the principles of the case adjudges that complainants own a half interest and C. B. Bennett the other half interest in the entire one hundred and sixty acres; that complainants are entitled to an account for rents, and C. B. Bennett for compensation for improvements. It adjudges that complainants are entitled to partition, so that the parties may each have an equal one-half share; and commissioners are appointed to make the partition, who are directed accordingly, and they are further directed to have regard to the situation, quantity, and advantages of each share, so that the same may be equal in value, as nearly as may be, and, if there be any inequality, they are to report it to the court. The decree then refers the papers to a special commissioner, who is directed to state an account between the parties of "the fair rental value of the aforesaid land during the occupation thereof by the said complainants, or either of them, and the said defendant, respectively, up to and including the year 1904," and to state an account of all permanent, valuable, and not ornamental improvements made by complainants or defendant, and of the taxes paid by defendant, and to "charge the said parties, respectively, with one-half of the said rental value of the said land, received by the said parties, respectively. As against the said charge for rents, the said commissioner shall credit the said parties, respectively, with one-half the value of the said improvements made thereon by the said parties, respectively, and shall credit the defendant with one-half of the amounts paid by the said defendant as taxes on said land, and said commissioner shall state the amounts, upon said basis, which shall then be found by him to be due by or from the said complainants to and from the said defendant, as the case may be." The

decree leaves all other matters in controversy until the coming in of the reports of the commissioners.

To recapitulate some of the facts, this record discloses very clearly the following: (1) In the year 1887 the whole tract of one hundred and sixty acres was wild land, occupied only by the beasts of the forest—just such land as it is to the interest of the state, and the society it represents, to have developed by cultivation. (2) Henry Bennett and C. B. Bennett bought this land from the state May 16, 1887. (3) The deed from the state was to those two, and therefore each took an undivided one-half on the face of the conveyance. (4) The purchase price was $58.05, of which C. B. Bennett paid $43.05 and Henry only $15. (5) From the date of the purchase C. B. Bennett has paid all the taxes, and Henry not a cent of them. So far from paying any of them, he persistently refused to pay a stiver. (6) C. B. Bennett vigorously and laboriously attacked the virgin wilderness, and cleared up about ninety acres of it, put the plow in it, and built five or six houses on it. (7) Henry wasted no muscular force on these lines, but did, off and on, come and live there, in a house that C. B. Bennett built, and worked fifteen or twenty acres of the land C. B. Bennett had cleared. (8) Henry, while he lived, and C. B. Bennett were entirely harmonious, so far as this record shows; and Henry made no complaint of C. B. Bennett's labor, nor did he ever set up any claim to its fruits. Now, when C. B. Bennett cannot testify, Henry's children, living on the land C. B. Bennett improved, complain, and want not only partition, but accounting for use and occupation. (9) While C. B. Bennett was laboring on the land, Henry was out of the state for about.seven years of the time, but the house constructed by C. B. Bennett was his haven of final resort. Henry died March 3, 1900, and his children filed their bill December 9, 1901.

The majority of the court, with whom I doubtingly concur, affirm so much of the decree as dismisses the cross-bill, but we all fully agree in modifying other parts of it.

1. As to eighty acres being the half of the one hundred and sixty acres cleared, improved, and cultivated by C. B. Bennett, he cannot be called on to account for rents. *Medford* v. *Frazier,* 58 Miss., 241.

2. As to the excess over eighty acres, which excess he cleared, improved, and cultivated, he may be required to account for its reasonable rental value, but may offset this with the reasonable cost of the clearing and improvements put by him on that part; and if there be a balance in his favor, he shall have a lien for it on the share of the tract allotted to appellees. If the balance be in their favor, they shall have a lien for it on the share allotted to him.

3. Taxes paid by either of the parties in excess of what was due from him shall be a lien on the share allotted the other.

4. In making the partition of the land, it shall be as if it were now a wilderness, and the eighty acres to which C. B. Bennett is entitled shall be allotted him of the land he has cleared and improved; and, in the event this was more valuable than the other half in a state of nature, contribution shall be ordered. *Paddock* v. *Shields,* 57 Miss., 340; Freeman on Co-t. & Par., sec. 509; *Ward* v. *Ward,* 40 W. Va., 611 (21 S. E., 746; 29 L. R. A., 449; 52 Am. St. Rep., 911, and notes) ; *Allen* v. *Hall,* 50 Me., 253; *Donnor* v. *Quartermas,* 90 Ala., 164 (8 South., 715; 24 Am. St. Rep., 778) ; *Sneed* v. *Atherton,* 6 Dana, 276 (32 Am. Dec., 70) ; *Kurtz* v. *Hibner,* 55 Ill., 514 (8 Am. Rep., 665) ; *Louvalle* v. *Menard* (Ill.), 41 Am. Dec., 161; *Dugan* v. *City,* 70 Md., 1 (16 Atl., 501) ; *Collect* v. *Henderson,* 80 N. C., 337. Many other authorities might be cited—so many that this might be regarded as a cardinal principle.

5. If the inquiry as to rents goes behind the date of the death of Henry Bennett, an administrator of his estate may be made a party, unless administration is shown to be unnecessary.

*Reversed and remanded for procedure according to the principles announced in this opinion.*