DELTA COTTON OIL Co. *et al. v.* LOVELACE.

(Division A. June 10, 1940.)

[196 So. 644. No. 33931.]

Butler & Snow, of Jackson, for appellant, Delta Cotton Oil Company.

**Moody & Davis,** of Indianola, for appellants, J. E. Hogin and Fletcher & Barnett.

118

Butler & Snow and Moody & Davis, for appellants.

122

**Cooper & Thomas,** of Indianola, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee sued appellants in the chancery court for the recovery of compensation for use and occupation of her half interest in a cotton gin property, located in Indianola, for the ginning seasons of 1933-4, 1934-5, 1935-6, 1936-7, and 1937-8. The appellant, Delta Cotton Oil Company, had acquired what it supposed to be the entire interest in the property at the foreclosure sale under a deed of trust to it, executed by Lovelace and Hogin, a partnership, hereinafter more particularly to be mentioned. This foreclosure was on June 23, 1933, and the Delta Company operated the plant until March 1, 1934, when the company sold it to appellant Hogin on credit, secured by deed of trust. Hogin operated the plant until May 3, 1935, when his deed of trust was foreclosed to the Delta Company, and the latter conveyed it to appellants, Fletcher and Barnett, on May 10, 1935, who thereupon operated it as grantees of the Delta Company until December 21, 1937, at which time they acquired, for a large consideration, the outstanding interest of appellee by quitclaim deed from her of that date. All these grantees,

except perhaps Hogin, had thought until shortly before the time of the quitclaim aforesaid, that they had purchased the entire interest in the property.

Appellee's interest came about in this way: For four or five years prior to May 19, 1920, the Buckeye Cotton Oil Company had owned the property and operated a gin thereon under the management of appellee's husband as an employe. On the date last aforesaid the Buckeye Company conveyed the entire property to appellee's husband and her brother-in-law, Hogin, and one Voorhies. On January 14, 1921, appellee's husband conveyed to her his undivided one-third interest. On June 2, 1922, Voorhies conveyed his one-third interest to Hogin, and on January 30, 1923, Hogin conveyed to appellee a one-sixth undivided interest, in consequence of which appellee became the owner of an undivided one-half interest, the other half being in her brother-in-law, Hogin.

What was the value of the property at the time of the foregoing deeds to appellee is not shown, except that the consideration in the deed from the Buckeye Company to Lovelace, Hogin, and Voorhies was $8000, three-fourths of which was on credit. Appellee, as a witness, admitted that she paid nothing for any of the deeds to her. It is shown, however, that, from the date of appellee's acquisition of the half-interest, Hogin, appellee's tenant in common, together with her husband, conducted as partners a ginning business on the property for a period of more than ten years, and until the date of the foreclosure of the deed of trust, which the partners had given as sole owners of the entire property to the Delta Company, which foreclosure, as already stated, was on June 23, 1933.

Appellee was not a member of the firm; she assumed no personal responsibility in the conduct of its business; she did not devote an hour's time or attention to it, and she placed not a dollar of her own in it. And, so far as the property was concerned, her sole relation to it was as a mere tenant in common.

The record shows that, during the ten years aforesaid, Hogin, appellee's cotenant, and the partnership, composed of Hogin and appellee's husband, in order to enable them to compete with other gins, replaced all or substantially all the old machinery theretofore on the property with new and modern machinery at their own expense and brought thereto additional units of machinery and equipment; and in 1929 they replaced the old with a new gin building, to all of which appellee contributed not an hour's time nor a dollar of her own. Appellee's husband testified that at the time he conveyed his interest to his wife, at which time she first became a tenant in common, the original gin equipment was still on the property. He testified on cross-examnation that the partnership, Lovelace and Hogin, thereafter bought new equipment, engine, gin stands, conveyors, press and power plant, and all the like, and completely re-equipped this gin, and, as already mentioned, they built a new gin house.

As an illustration of what they did, we may refer to the old steam power equipment. This had become outmoded and too expensive to operate in competition, and it was sold as scrap iron as being worth only a nominal sum, and was replaced by a modern 100-horse power Diesel oil engine and fixtures belonging thereto, at a cost of around $6,000. Appellee's husband testified that the average life of gin equipment, such as that here in question, is ten years, at the end of which time, without replacements, the property would be worthless from the standpoint of any use or income therefrom. On all these features in respect to the improvements, the testimony of appellee's husband is without substantial dispute; and that testimony shows the facts as we have above stated them.

Three estimates or appraisals of the value of the property as enhanced by the aforesaid improvements are given in the record. It is shown by appellee's husband that at the time it was mortgaged by the partnership to the Delta Company in 1930, it was appraised at $40,000. Another

witness for appellee placed its value during the years for which this suit is brought at $35,000, of which he ascribed $10,000 in value to the lot itself. There was another appraisal made at about the close of this period at $31,000. If we take the lowest of these three estimates as to the value of the entire property as improved and deduct therefrom the only estimate we have of the value at the same time of the lot, there is left a balance of $21,000 as representing the enhancement by improvements, which, for appellee's half, would be $10,500. The court allowed her $8,750 for the five seasons' use and occupation sued for, which, when taken from the $10,500, would leave $1,750—ample to cover any of the old improvements which had remained in a usable condition on the property.

These improvements, this building of a new gin house, the replacements of the original machinery with new and modern equipment was all done with the knowledge and acquiescence of appellee, and not only so, but by an arrangement with her that until the property was worked out of debt by her husband and brother-in-law, she would receive no compensation for their use and occupation of it, in which connection there is to be added for what it is worth that they never succeeded in working it out of debt, but their entire interest supposed to be then the whole property was foreclosed on June 23, 1933, the property bringing less than the debt.

Appellee contends, however, that she should not be charged with improvements made on the property, although solely by her cotenant and his partner, because, as we understand her argument, the improvements were replacements merely of what they wore out in the use. This argument, when examined, leads to this: That however small in value or inadequate in equipment a common property may have been originally and however much with the acquiescence of the non-improving cotenant its value may have been enhanced, even if in the thousands of dollars, by new and modern equipment and building, the improving cotenant is entitled to nothing

for the enhancement in value as a result of subsequent improvements made by him. The statement of the argument is enough to cause its rejection.

It may be conceded that when a tenant in common is in possession of the entire property, and so long as he is not called on to pay for its use and occupation, he is under the duty to preserve the property and to make all ordinary repairs which will go to its preservation as respects its condition at the time he went into possession; but when changing conditions or the inevitable result of the mere elapse of time requires the making of extraordinary repairs or the substitution of new structures and modern fixed equipment for the old, as was the case here, these are not repairs to be dealt with as such, but are improvements.

We have set forth the attitude of the parties and the physical situation under which the improvements were made, and there remains only to apply thereto the established rules, which we shall now state.

The rule is that where a tenant in common has, with the acquiescence of his cotenant, made valuable improvements on the entire property so that the improvements made by him cannot be allotted solely to him, the other tenant who has made no improvements must pay to the improving tenant a sum equal to the proportionate amount of the enhancement, by the improvement, less a fair proportionate allowance against the improving tenant for use and occupation; and for the balance of the amount aforesaid a lien will be fastened upon the share of the non-improving tenant whenever he calls for a division of the property by which his undivided share shall be allotted to him. This is the rule of equity enforced everywhere in partition proceedings, and is founded upon the principle that he who would have the aid of equity must as a condition allow equity to be done to the opposite party. It is illustrated by such cases as Bennett v. Bennett, 84 Miss. 493, 36 So. 452, and see the cases therein cited, and 47 C. J. 473.

The same principle applies when, in a court of equity, as is the case here, a tenant in common is demanding of his cotenant compensation for use and occupation. If he has made none of the improvements, or if substantially all the improvements presently on the property were, with his acquiescence, made by his cotenants, he cannot call for compensation for the use and occupation of the property in its improved state except upon the condition that there be credited against his demand the amount of the enhancement of the value of his share resulting from the improvement made by his improving cotenant who has been in the use and occupation of the property. 14 Am. Jur., p. 118, cases and annotations under note 11; and see also Bennett v. Bennett, supra, 83 Miss. at page 501, 36 So. at page 453, numeral 2.

And the general rule applicable to the facts in this case is also that any right which a cotenant possesses to an allowance for improvements to the common property may be enforced by a successor in interest of the cotenant, such as purchasers of the property. 14 Am. Jur., p. 119 and notes 2 and 3.

The case may, therefore, be summed up to a conclusion as follows: The court allowed the complaining cotenant a sum for the use and occupation of her share of the property in its improved condition for the five ginning seasons involved in the total amount of $8,750, but failed to credit against this amount the enhancement in value of appellee's share as a result of the improvements made solely by the other cotenants. The undisputed proof, some of which we have mentioned, is ample to show that had this been done, the value of the improvements chargeable to complainants' share would equal or exceed the amount due for the use and occupation thereof for the five seasons aforesaid; hence the decree should have been for the defendants.

Other points are within the record and have been presented and argued at length by the parties. One among the other contentions urged by appellants would perhaps

upon a further statement of the facts pertinent to that contention lead to the same result that we have reached on the question of the allowance for improvements; but since one ground for decree is enough, we do not enter into any discussion of the others.

Reversed, and decree here for appellants.