

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

March 6, 1952

Hon. Olin Culberson, Chairman
Railroad Commission of Texas
Austin, Texas                    Opinion No. V-1417

Re:  Legality of altering, re-
pairing, and extending
the existing air condi-
tioning system for the
eleventh floor of the
Dear Sir:                         Tribune Building.

Your request for an opinion reads, in part, as
follows:

"The existing heating, ventilating, and
cooling system for the Eleventh Floor of the
Tribune Building, Austin, Texas, is not ade-
quate. We would like to make some alterations,
repairs and extensions of the existing heating
and air conditioning system.

"This system was originally designed for
residential penthouse occupancy. The original
human occupancy load for the cooling system
was based on a maximum of three or four people.
The present full-time employees in this space
number approximately ten plus any visitors
that may be in the offices.  . . .

"Your opinion as to whether we can use
State funds to make these alterations, repairs
and extensions of the existing heating and air
conditioning systems, Eleventh Floor, Tribune
Building, Austin, Texas, is requested."

House Concurrent Resolution 38, 52nd Leg., R.S.
1951, p. 1563, provides, in part, as follows:

"Whereas, The Legislature finds that it
is economically unsound to air condition State
buildings, except new construction, or to pur-
chase room air conditioning machinery or units
for use therein; and . . .

"Resolved by the House of Representa-
tives, the Senate of Texas concurring, That
the policy of the State of Texas is not to
permit the use of State funds for air condi-
tioning State buildings, except new construc-
tion, or for the purchase of room air condi-
tioning machinery or units; and, be it further
. . ."

In Att'y Gen. Op. V-1269 (1951) we construed
the above quoted provisions, holding that this resolu-
tion prohibits State agencies from purchasing new air
conditioning equipment, except in new construction, in
the absence of a specific appropriation for such a pur-
chase. There is no such specific appropriation in the
current appropriation bill /House Bill 426, Acts 52nd
Leg., R.S. 1951, ch. 495, p. 1228/ to the Railroad Com-
mission. However, "Item 4" of the appropriation to
"Capitol and State Office Buildings" provides funds for
"miscellaneous repairs, including repairs to steam,
electric, and air conditioning equipment," and "recon-
ditioning cooling tower" in the Tribune Building. H.B.
426, supra, at p. 1328.

We have previously held that air conditioning
installations which were in use prior to the passage of
House Concurrent Resolution 38 may continue to be oper-
ated, repaired, and maintained, even though no specific
appropriation has been made for that purpose. Att'y
Gen. Op. V-1269, supra. Thus, the Railroad Commission,
which was operating air conditioning equipment in the
Tribune Building before the resolution was passed, may
continue to operate and maintain its equipment. It re-
mains, however, to determine whether the proposed work
set out in your request may be carried out under the au-
thority to repair and maintain existing air conditioning
facilities.

The terms "repair" and "maintain," and other
similar terms, have been judicially defined in decisions
too numerous to be exhaustively reviewed here. "Repair"
contemplates the restoration of a thing to its original
condition or to a sound state after injury, decay, or
any other form of depreciation. To repair is to mend.
The word "maintain" has been held to embrace "repair,"
and it implies the upkeep of something already in exist-
ence. To maintain equipment is to keep it in good repair.

These terms are discussed in M. K. & T. Ry. Co. v. Bryan, 107 S.W. 572, 576 (Tex. Civ. App. 1908), as follows:

> "The word 'repair,' as defined by Webster, means 'to restore to a sound or good state after decay, injury, dilapidation, or partial destruction'; and the phrase 'in good repair' means in such state of reparation, and implies the existence of the thing to be repaired. It has been held that the words 'maintain' and 'repair' mean practically one and the same thing. . . ."

However, work which substantially changes the character or enhances the value of property is not maintenance or repair work. The distinction has, in the past, been recognized by this office. Att'y Gen. Op. O-1216 (1939). When changing conditions or the inevitable passage of time requires the substitution of modern for antiquated equipment, or that extraordinary repairs be made, these are not "repairs" as such, but "improvements" or "alterations." Delta Cotton Oil Co. v. Lovelace, 196 So. 644 (Miss. Sup. 1940). As applied to the upkeep of machinery, the words "repair" and "replace" contemplate only a restoration of the equipment to its original condition, not the employment of experts to redesign and reconstruct it. Allegheiy County v. Maryland Casualty Co., 42 F.Supp. 672 (W.D. Pa. 1941). Under the authority to repair, there can be no enlargement or improvement except insofar as the work of repairing necessarily enlarges and improves. White v. Perkins, 65 S.W. 2d 423 (Tex. Civ. App. 1933).

The proposed remodeling work contemplates a considerable enlargement of the air conditioning system presently being used by the Railroad Commission. The contractor proposes to install new mechanical equipment, as well as to increase the capacity of the machinery which is now in use. In short, an installation originally designed to care for a maximum of four persons is to be enlarged to accommodate a minimum of ten. Such a project is not comparable to the ordinary maintenance and repair work which this office held to be authorized under the provisions of House Concurrent Resolution 38. Therefore, you are advised that it is our opinion that the Railroad Commission may not use State funds for the purpose of making this proposed enlargement of the air conditioning system for its offices on the eleventh floor of the Tribune Building.

In Opinion V-1269, *supra*, this office defined an air conditioning unit as "an apparatus used to reduce the temperature and affect the humidity of the air in an enclosed space." It would be unreasonable to assume that the resolution was passed in an effort to prohibit State agencies from purchasing heating equipment. It is our opinion, therefore, that House Concurrent Resolution 38 does not in any way restrict the authority to enlarge the heating plant which is now being used by the Railroad Commission.

## SUMMARY

House Concurrent Resolution 38, 52nd Leg., R.S. 1951, prohibits a State agency from substantially enlarging and increasing the capacity of an air conditioning installation which was in operation before the passage of the resolution. This resolution, however, has no effect on the authority of an agency to purchase or enlarge its heating equipment.

APPROVED:

David B. Irons
Administrative Assistant

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

CBG/rt/jmc

Yours very truly,

PRICE DANIEL
Attorney General

By Calvin B. Garwood
Calvin B. Garwood, Jr.
        Assistant