822 So.2d 1092 (2002)
Jason MURPHREE, Appellant,
v.
Helen COOK, Appellee.
No. 1999-CA-01854-COA.
Court of Appeals of Mississippi.
April 9, 2002.
Certiorari Denied July 25, 2002.
*1094 B. Sean Akins, Ripley, attorney for appellant.
Richard Joseph Babb, Ripley, attorney for appellee.
EN BANC.

ON MOTION FOR REHEARING
McMILLIN, C.J., for the court.
¶ 1. The motion for rehearing is denied. The original opinion of this Court is withdrawn and the following opinion is substituted therefor.
¶ 2. This case comes before the Court as an appeal from a judgment in a real estate partition action filed in the Chancery Court of Marshall County by the appellant, Jason Murphree. Murphree sought to partition by sale a tract of commercial property, record title to which was vested in Murphree and Helen Cook as tenants in common. The Bank of Holly Springs was an additional defendant, solely because it was a necessary party as the holder of a deed of trust on the property securing a purchase money loan on the tract made to Murphree and Cook.
¶ 3. The chancellor, rather than partitioning the property as prayed for by Murphree, determined what the chancellor felt to be the fair value of Murphree's half interest in the property through a rather complex calculation, and ordered that Murphree convey his interest in the property to Cook upon receipt of the payment of that sum. Murphree has appealed that decision, alleging that it exceeded the authority of the chancellor under these circumstances.
¶ 4. Cook contended at the trial level that Murphree was not entitled to partition because he had contractually agreed to convey his interest in the property to Cook a number of years earlier and had simply failed to complete the formalities of the conveyance through a mutual oversight. However, apparently now satisfied with the terms of the chancellor's judgment, *1095 Cook has not cross-appealed to advance that same proposition before this Court. Rather, she seeks only to have the chancellor's judgment affirmed in its present form.
¶ 5. This Court finds that the chancellor manifestly abused his discretion in attempting to fashion a unique remedy to sever the cotenancy that he apparently found to be more equitable under the circumstances than a partition but which ignored the statutes of this State defining the only lawful method available to accomplish that purpose. We, therefore, conclude that the matter must be reversed and remanded for further proceedings consistent with this opinion.

I.

Facts
¶ 6. Certain essential facts of this case are beyond dispute. In practically every remaining instance where no concrete proof exists, the parties offer markedly contrasting versions of the facts.
¶ 7. These facts are not in dispute. Murphree and Cook borrowed $85,000 from the Bank of Holly Springs on June 29, 1993, on a joint note and used the loan proceeds to purchase the assets of a business known as Hoover Distributing. The purchase included the real property which is the subject of this suit and a certain limited amount of equipment useful in the business operation. Title to the real property was conveyed to Murphree and Cook as tenants in common. The real property had, prior to purchase, been used exclusively in the operation of Hoover Distributing and continued to be used in the same manner after the transaction was consummated. Murphree and Cook secured the repayment of the $85,000 loan by a deed of trust on this real property. The parties did not enter into a formal written agreement as to their intentions in purchasing the property, and, at trial, they gave sharply contrasting accounts of what their intentions were.
¶ 8. Cook testified that the parties had purchased these assets, including specifically the real estate, to acquire the existing business of Hoover Distributing and operate it as a partnership under the trade name of Cook Oil Company. However, Cook contended, after only a month of operation, the parties decided to end their partnership and, as a result, entered into a dissolution agreement styled "Notice of Dissolution" dated July 27, 1993, under the terms of which Cook assumed all partnership liabilities and was, in turn, entitled to receive all partnership assets. No specifics were provided as to what constituted the assets of the partnership. The agreement was entered into evidence as an exhibit and its authenticity is not in dispute. According to Cook, the dissolution agreement's mention of the word "assets" was intended to specifically include the real property. She said that it was a mere oversight that Murphree did not contemporaneously execute a deed formally conveying his fractional interest in the property to her, but that by virtue of the dissolution agreement, he remained obligated to do so without further consideration.
¶ 9. Murphree, on the other hand, disputes the fact that he and Cook ever entered into a partnership to operate the business bought from Hoover Distributing. Rather, he contends that he intended only to purchase a half interest in the real property as an investment and that he had done so primarily as an accommodation to Cook since she did not have the necessary credit to arrange for the necessary financing to purchase the property. According to Murphree, the plan had been that, at some time in the future when Cook was on *1096 a firmer financial foundation, she would buy out Murphree's interest in the property at an agreeable price that would give him a satisfactory return on his investment. He claims that the dissolution agreement's true purpose was to dissolve certain business partnership interests then existing between him and Cook's husband, Thomas Wayne Cook. He testified that Cook insisted on inserting the references to possible partnerships with her in the agreement and that he did not object because he knew that such partnerships did not exist so that any such references would be meaningless and, thus, harmless surplusage in the agreement.
¶ 10. The parties do not dispute that Cook was in complete control of the property from shortly after the date of purchase until January 30, 1997, when Murphree filed this partition action to sever their tenancy in common. There is no dispute Cook used the property solely to advance the purposes of the business bought from Hoover Distributing. It is also not disputed that Cook has maintained the property, made all loan payments due to the Bank of Holly Springs, paid the taxes on the property, and made a number of improvements to the property at her sole expense. Cook contends that this demonstrates conclusively that the parties intended for her to have exclusive ownership of the property under the relevant provisions of the dissolution agreement. Murphree, on the other hand, testified that, since Cook had exclusive possession of the property, he would have been entitled to rent on his half interest and that he considered Cook's payments for taxes, maintenance, and improvements as having been made in lieu of rent.

II.

The Chancellor's Decision
¶ 11. The chancellor found as a matter of fact that the parties had intended to and did, in fact, enter into a partnership to operate the business acquired from Hoover Distributing under the trade name of Cook Oil Company, but that the partnership had been dissolved by mutual agreement on July 27, 1993, as evidenced by the dissolution agreement. However, the chancellor found as fact that the term "assets of said businesses" as used in the agreement was not intended to cover the real property held by the parties as tenants in common. Therefore, he found that Murphree had continued to own an undivided one-half interest in the property during the entire period of Cook's sole occupancy.
¶ 12. The chancellor then found that Murphree and Cook were jointly liable for the various debts and obligations related to the property during their period of equal ownership and he calculated those obligations to be $103,805. Because Cook had paid all of these debts, the chancellor awarded her a judgment against her cotenant Murphree for one-half those amounts, or $51,902.
¶ 13. At that point, the chancellor proceeded to value Murphree's one-half interest in the property and set that value at $42,500. This valuation was based on nothing more than the fact that it represented one-half the original loan amount used to purchase the land and other assets. The chancellor ordered that Murphree's title to his one-half interest be divested out of Murphree and into Cook, in exchange for which Murphree would receive a credit of $42,500 on the judgment previously awarded, leaving a balance on that judgment of $9,402.
¶ 14. Lastly, the chancellor determined that Murphree was entitled to additional credit equal to one-half of a fair rental for the property during the period of Cook's *1097 exclusive occupancy and ordered that the parties attempt to negotiate an agreed rent. He further ordered that, if they were unable to do so within the allotted time, he would consider the matter further and adjudicate a proper credit for rent.
¶ 15. As it turned out, the parties were unable to agree on a rental figure and returned to court to have the matter resolved by the chancellor. By that time, Hon. Anthony Farese, the original chancellor sitting on the case, had left the bench. The matter was taken up by Hon. Glenn Alderson, another chancellor in the district. Chancellor Alderson declined any attempt to have him reconsider matters already adjudicated by Chancellor Farese and limited himself solely to a determination of a fair rent for the period in question under the terms of Chancellor Farese's earlier ruling. After an evidentiary inquiry, he determined the fair rental value to be $19,200 for the affected period and, therefore, awarded Murphree a credit of $9,600 based on his one-half interest in the property. Crediting this $9,600 against the original judgment (as said judgment had already been reduced by Chancellor Farese's adjudicated credits for expenses and costs) resulted in a net credit in favor of Murphree of $198.
¶ 16. Thus, from the state of the record now before us, it would appear that the ultimate outcome of the case was that, upon receipt by Murphree of the sum of $198 from Cook, Murphree would be divested of his one-half interest in the subject property and Cook would become the sole owner, subject only to the deed of trust lien held by the Bank of Holly Springs.
¶ 17. Murphree, dissatisfied with this relief, has appealed. He presents three issues for consideration. Two of the issues relate to the nature of the relief granted by the chancellor and the third alleges reversible error in the chancellor's refusal to recuse himself after the Marshall County Chancery Clerk testified as an expert witness on rent values at the hearing to determine fair rental value for the property.

III.

Preliminary Discussion
¶ 18. At trial, there was a disputed issue of fact as to whether the real property constituted an asset of the partnership or whether title remained in the two grantees as tenants in common. Cook maintained that the property was an asset of the partnership since it was purchased with partnership funds and its purpose was clearly intended to advance the interests of the anticipated partnership. Because this real estate was a partnership asset, according to Cook's position at trial, the dissolution agreement granting Cook all of the assets created a contractual obligation on the part of Murphree to formally convey his interest in the land to Cook. According to Cook's contention, the failure to obtain a deed at the time the dissolution agreement was entered was a mere oversight that did nothing to alter Murphree's obligation to execute such a deed when duly called upon to do so. Of course, the result of Cook's prevailing on this issue would have been that Cook would have been entitled to compel Murphree to convey his interest without further consideration and the various issues regarding expenses related to the property during the intervening period would have been rendered moot since equity considers as done what ought to have been done and the transfer would have been given effect back to the 1993 dissolution date. Faulkner v. Faulkner, 192 Miss. 358, 365, 5 So.2d 421, 422 (1942).
*1098 ¶ 19. The question of whether a particular piece of real property is a partnership asset is generally a question of fact that is not necessarily determined by the record title, but rather hinges principally upon the intent of the parties. Crowe v. Smith, 603 So.2d 301, 305-06 (Miss.1992). The chancellor concluded that (a) the failure of the dissolution agreement to specifically mention the real property, (b) the fact that there was not a formal instrument of conveyance contemporaneous with the execution of the dissolution agreement, and (c) the fact that record title was held by the individual partners as tenants in common without any reference in the deed to a partnership were enough in combination to overcome any contrary indication of intent arising from the fact that the property was purchased with partnership funds. See Miss. Code Ann. § 79-12-15 (Rev.1996). Because Cook did not file a cross appeal asserting before this Court the same argument made to the chancellor, we conclude that it would be improper to search for error in the chancellor's ruling on this score no matter what merit it might appear to have on its face. We, therefore, proceed in our deliberations on the basis that the property, for the entire period in question, was held by the parties as tenants in common without any formal agreement or understanding as to the use and occupancy of the property beyond those arising under the laws of Mississippi pertaining to jointly-owned property.

IV.

Issue One: Severance of a Tenancy in Common by Means Other Than Partition
¶ 20. Murphree brought suit seeking to partite the property under authority of Section 11-21-3 of the Mississippi Code of 1972. Rather than granting the relief requested, the chancellor ordered Murphree divested of his interest in the property at a price calculated upon such factors as the original cost, the subsequent expenses of maintaining and operating the property, and a fair rental factor based on the fact that one tenant was out of possession during the entire period of joint ownership.
¶ 21. The Mississippi Supreme Court has said that the right of partition created by statute is an absolute right of a tenant in common. Cheeks v. Herrington, 523 So.2d 1033, 1035 (Miss.1988). Cook suggests that the chancellor's authority to divest Murphree of his title at a price set by the chancellor can be found in Section 11-5-117 of the Mississippi Code, which provides, in part, that "the Chancellor ... is authorized in all matters providing for a sale ... of real property, including ... partition ... to order or decree the sale... under such terms and conditions as the Chancellor may impose...." We find no reported cases decided by the Mississippi Supreme Court suggesting that this statute would permit the chancellor to override one co-tenant's assertion of his "absolute" right mentioned in Cheeks v. Herrington to have his interest in the property set apart to him according to procedures provided in the partition statutes. It may well be that the invocation of this more general statute would be appropriate when the parties themselves have agreed to a process for partition different from that outlined in the partition statutes. There may be other circumstances where this statute might have some application. Nevertheless, we think that, in every case that the chancellor proposes to subvert the detailed statutory procedures for a partition in favor of some ad hoc means of sale, especially when it is undertaken over the strenuous objection of one of the co-tenants, that decision would be subject to being set aside on appeal on an abuse of *1099 discretion standard. See McNeil v. Hester, 753 So.2d 1057, 1063 (¶ 21) (Miss.2000). In this case, the chancellor set the price to divest Murphree of his interest as the original purchase price of the property. The purchase had occurred some three and one-half years prior to the commencement of the partition action and there was no evidence that this figure accurately reflected the market value of the property at the relevant time. We conclude that this means of valuing the co-tenants' respective interests in the property was entirely arbitrary and, thus, an abuse of discretion.
¶ 22. Because, under Cheeks v. Herrington, Murphree's right to have his interest in the property set apart to him by a partition conducted according to the applicable statutes would seem to be preferred over some alternate plan devised by the chancellor, we find it necessary to reverse that portion of the chancellor's judgment ordering Murphree to be divested of his fractional title by a procedure of the chancellor's own making. We remand for further proceedings to sever this tenancy that will be in accord with the statutes setting out the proper means of doing so, there appearing in the record no justification for ignoring those procedures, apparently favored by the Mississippi Supreme Court, and proceeding by a private sale strenuously opposed by one of the cotenants.
¶ 23. In anticipation of such a proceeding, we conclude that additional matters raised by Murphree in this appeal ought to be addressed so that the dispute may be finally resolved on remand.

V.

Accounting for Improvements and Expenses of Maintaining the Property
¶ 24. Although we are remanding for a statutory partition, the issue of accounting between these two cotenants will remain an issue since the chancellor has the statutory authority, as a part of dissolving the cotenancy, to "adjust the equities between and determine all claims of the several cotenants...." Miss.Code Ann. § 11-21-9 (Supp.2000). This provision has been held to permit adjustments to account for such matters as rent, improvements to the property, payment of taxes, and other related expenses. Bennett v. Bennett, 84 Miss. 493, 36 So. 452, 453 (1904); Walker v. Williams, 84 Miss. 392, 36 So. 450, 451 (1904); Reed v. Henson, 158 Miss. 224, 130 So. 108, 109 (1930). Because these issues remain unchanged no matter the procedure for severing the cotenancy, a substantial judicial economy could be realized if the portion of the judgment adjudicating those matters could be affirmed. We will consider them in that light.
¶ 25. Murphree complains that, in assessing the extent of his interest in the property, the chancellor deducted for various costs of operating, maintaining and improving the property that were paid solely by Cook during her occupancy. He cites Delta Cotton Oil Co. v. Lovelace, which announced the general rule that a tenant in possession not called upon by his cotenants to pay for his use of the property has a duty to maintain the property at his own expense in substantially the condition it was when he went into occupancy. Delta Cotton Oil Co. v. Lovelace, 189 Miss. 113, 196 So. 644, 646 (1940).
¶ 26. Because the chancellor in this case elected to assess Cook with one-half the rent value of the property for her occupancy of Murphree's undivided one-half interest in the property, we find that the general rule announced in the Delta Cotton Oil Co. case has no application. By assessing rent against Cook for the term *1100 of her occupancy, the chancellor has, in effect, "called on" Cook to pay for her exclusive use of the property. Delta Cotton Oil Co., 196 So. at 646. Murphree may not receive the full rent value of his half interest in the property while, at the same time, forcing Cook to pay the normal expenses of operating and maintaining the property, which, in this case, include such matters as repairs, improvements, taxes, and mortgage payments.
¶ 27. We have found nothing in the appellant's brief that would cause us to find reversible error in the manner in which the chancellor computed either the fair rental value properly chargeable to Cook because of her prolonged exclusive occupancy of the property or those costs and expenses advanced solely by Cook which, in adjusting the equities upon dissolution of the cotenancy, ought fairly to be chargeable to both cotenants in proportion to their percentages of ownership. Therefore, if on remand the property is subjected to a partition by sale, then the one-half of the sale proceeds apportioned to Murphree, whatever the price might ultimately prove to be, would be increased by the sum of $198, that being the net result in Murphree's favor from the various adjustments we have considered and found appropriate. The amount otherwise due Cook for her one-half interest in the property would be diminished by a like amount.
¶ 28. If, rather than a partition by sale, the chancellor should undertake a partition in kind, then the portion set apart to Cook may be subjected to a charge in the nature of owelty to secure the payment of the $198. Miss.Code Ann. § 11-21-33 (1972).
¶ 29. We do not find reversible error in the chancellor's refusal to recuse himself based on the fact that the chancery clerk of the county testified as an expert on prevailing rental values in the area. There was no evidence of any particular close connection between the chancellor, who resided in another county, and the clerk. The chancellor specifically indicated that he could hear the testimony and give it no greater weight than he would any other evidence. Such matters are entrusted to the sound discretion of the chancellor, involving as they must, largely subjective considerations and are reviewed under the manifest error standard. Walls v. Spell, 722 So.2d 566, 571 (Miss.1998). We find nothing in this record to convince us that the chancellor was manifestly wrong in making his determination not to recuse himself.
¶ 30. THE JUDGMENT OF THE CHANCERY COURT OF MARSHALL COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND CHANDLER, JJ., CONCUR.
BRANTLEY, J., NOT PARTICIPATING.