BARNES, J.,
for the Court:
¶ 1. This is an appeal from the judgment of the Yalobusha County Chancery Court entered on April 18, 2008, dissolving the partnership of Larry Jess McCachren Jr. and Bob Best Jr. McCachren filed a complaint on December 6, 2006, to dissolve the partnership and to partition property that *357 he owned with Best. After dissolving the partnership, the chancellor awarded McCachren not only Best’s entire interest in the partnership property, but also a money judgment against Best in the amount of $35,071.39. Finding this disposition not supported by substantial evidence, we reverse and remand for further proceedings.
SUMMARY OF FACTS
¶ 2. Best owned a store known as “Enid Lake Trading Post” located on approximately 2.9 acres at a crossroads in Yalobu-sha County. After a fire partially destroyed the store building, Best moved the store into a smaller building on the property. He and McCachren entered into a partnership agreement on January 14, 2004, to build a larger convenience store on the property, and they continued using the same name as Best’s previous store. Under the terms of the agreement, both partners owned fifty percent of the land, building, inventory, and “all assets of the business.” Best conveyed a one-half interest in the land to McCachren and construction began on the site. McCachren stated that he valued the property at $10,000; however, Best valued the land at $30,000, stating that he would not “take less than [$]10,000 per acre.” The costs of construction were paid by McCachren, who provided receipts at trial that he claimed proved that he paid $106,642.79 for the construction. Although Best contends that this amount was “over-inflate[d],” we find no evidence to dispute the chancellor’s reliance on McCachren’s calculation.
¶ 3. After the building was finished, Best contributed inventory from his existing store; he also contributed inventory from his deceased father and inventory given to him by his mother, Diane Jenkins. Best testified that he managed and worked at the store for the first year of the partnership. Subsequently, the partners agreed to hire a third party, Sandra Flowers, to manage the store. However, Best terminated Flowers’s services after, in his opinion, she spent too much on unneeded labor, extended store credit to inappropriate people, and allowed the outstanding credit accounts to grow too large. After Best’s firing of Flowers, McCachren gave Best thirty days to purchase McCachren’s interest. Best offered McCachren $80,000 for his interest, but McCachren refused, stating that he would not take less than $100,000 for his share in the partnership. McCachren then removed the power meter, cut the internal power wires, and welded shut the doors to the store. There was testimony from an electrical contractor that the cost would be more than $7,500 to repair the damage done to the building’s electrical system. Best testified that he collected store credits of approximately $6,000 to $8,000 after the store closed and placed these amounts in a separate bank account. Best also testified that he spent the money on partnership debts; however, he did not produce any canceled checks or documents to show how the money was spent.
¶4. On December 6, 2006, McCachren filed a complaint to dissolve the partnership and to receive an equitable division of the partnership debts and assets, a judgment against Best for one-half of the partnership debts, a partition of the property jointly owned by Best and McCachren, a lien on Best’s one-half interest of the real property to secure indebtedness owed by Best, and the sale or award of the portable building on the property in order to satisfy Best’s share of the debt. After receiving testimony at trial, the chancellor awarded the partnership’s entire property to McCa-chren, gave Best an offset of $5,000 (for one-half the value of the partnership property), and awarded McCachren a judgment for $35,071.39, representing Best’s one-half of the partnership debt. This judgment amount was derived as follows:
*358 $ 106,642.79 (capital contribution by McCachren)
- 26,500.00 (less value of Best’s contributions of
real estate and inventory)
80,142.79
-⅞- 2
40,071.39 (50% interest in property)
5,000.00 (value of Best’s one-half of the
partnership property)
$ 35,571.39
Best appeals, claiming that: (1) the chancellor’s findings as to the respective capital contributions of the parties, as well as the valuations of the property, were not supported by substantial, credible evidence, and (2) the chancellor committed manifest error by failing to order the judicial sale of the property and assessing the respective capital accounts of the parties against the proceeds. Finding error, we reverse and remand the case for further proceedings.
STANDARD OF REVIEW
¶ 5. In property partition cases, this Court will affirm the ruling of the chancellor unless there is manifest error. Georgian v. Harrington, 990 So.2d 813, 815-16 (¶ 7) (Miss.Ct.App.2008) (citing Lynn v. Lynn (In re Will of Lynn), 878 So.2d 1052, 1055 (¶ 11) (Miss.Ct.App.2004)). “This Court will not disturb the chancellor’s opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Holloman v. Holloman, 691 So.2d 897, 898 (Miss.1996).
I. WHETHER THE CHANCELLOR’S VALUATIONS OF THE JOINTLY OWNED PROPERTY AND CAPITAL CONTRIBUTIONS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 6. Property valuation is a question of fact. Messer v. Messer, 850 So.2d 161, 170 (¶ 42) (Miss.Ct.App.2003) (citing Ward v. Ward, 825 So.2d 713, 719 (¶ 21) (Miss.Ct.App.2002)). As long as “some evidence” exists to support a chancellor’s valuation judgment, this Court will uphold the decision. Id. at (¶ 43) (citing Dunaway v. Dunaway, 749 So.2d 1112, 1121 (¶ 29) (Miss.Ct.App.1999)).
¶ 7. We find the chancellor’s assignment of value to the jointly owned property is in error as it is not supported by the evidence. The chancery court found that it was “stuck” with a value of $10,000 for the partnership’s real estate, as there was no evidence offered as to the present value of the improved real property. We disagree. The chancellor found that McCachren contributed $106,642.79 to the construction of the convenience store, based on the McCa-chren’s testimony and the invoices and receipts submitted,[1] yet in effect, found that the value of the real estate had not been increased by the construction. This Court certainly understands the chancellor’s frustration over not being provided detailed and accurate valuations by the parties, but a determination that the construction of a $106,000 convenience store on the property did not increase the valuation of the partnership’s property is clear error.
¶ 8. Further, Best testified that the partnership received an offer of $150,000 from a third party for the improved property, which McCachren rejected. Best also attempted to purchase McCachren’s share of the partnership for $100,000, but could only obtain financing for $80,000. McCa-chren rejected this reduced offer, showing that McCachren’s estimation of the value of the partnership was over $160,000. Therefore, we find the chancellor’s valua *359 tion of the partnership property at $10,000 was an abuse of discretion and not supported by the evidence. Thus, we reverse and remand for a re-evaluation of the partnership’s improved real property.
¶ 9. As to the value of Best’s contributions to the partnership, the chancellor determined that Best contributed real property valued at $10,000; inventory from his previous store of $4,000; and inventory from his deceased father’s store in the amount of $12,500. The inventory received from Best’s mother was not included in the valuation as the chancellor found that the inventory was from when Best had his own business and “was not involved in the partnership with [McCa-chren].” As to the value of Best’s contribution of real estate to the partnership, the chancellor stated:
There is no evidence whatsoever as to the present value of the store or the land. The plaintiff testified that the land prior to the construction was $10,000. The defendant disputed that when he gave no value as to it himself. He testified that if he were to sell it, he wouldn’t take less than 30,000, but what he will take and what the property is worth [are] two entirely different matters. Therefore, the Court is stuck with that value of $10,000.
We find that the chancellor was within his discretion to assign $10,000 as the value of Best’s contribution of real estate to the partnership in 2004, prior to the construction of the new store building.
¶ 10. Further, we cannot find that the chancellor erred in his valuation of the inventory from Best’s store or from his father’s store. The chancery court gave Best a credit of $4,000 for the inventory transferred from his existing business. Best testified that the inventory of his prior store was approximately $10,000. Best’s sister testified that the value was between $5,000 and $6,000 wholesale, but she also admitted that she did not have “any actual knowledge of what he actually took [from his store] and put into the new store.” No accounting or inventory list was provided to support Best’s estimation. Therefore, we find no error in the chancery court’s reliance upon the lower valuation, and even discounting it, due to the approximations used.
¶ 11. Best testified that the value of his father’s inventory was “somewhere in the neighborhood of $14,000.” Best’s sister “estimat[ed]” that the value of her father’s inventory was $15,000 wholesale and $20,000 retail. She also testified that approximately fifty percent of the inventory had a one-hundred-percent markup. Based on this testimony, we find that the chancellor’s valuation of $12,500 for the father’s inventory was supported by the evidence.
¶ 12. We do find error, however, in the chancellor’s decision to exclude all value as to the inventory of novelty items received from Best’s mother. According to Best, the inventory from Jenkins was “somewhere around maybe $10,000”; Jenkins valued the inventory at $11,000. The court did not include this inventory of novelty items in its valuation, stating that it “was contributed during the period of time in which [Best] maintained his own business and was not involved in the partnership with the plaintiff.” The testimony by Best and Jenkins was that this inventory was received after Best and McCachren began their partnership. Jenkins testified that her inventory went into the new store and that McCachren was with Best on at least one of the trips to get the stock. Also, Jenkins stated that she saw “some of the stuff that [she] had given them was in that store when it was closed down.” McCachren never contradicted the testi *360 mony of Best or Jenkins that the inventory from Jenkins went directly into the new partnership’s property. Furthermore, we find that the chancellor’s statement that this inventory was transferred prior to the partnership is not supported by evidence. The partnership agreement was dated January 15, 2004. However, Jenkins testified that the inventory was transferred in the summer of 2004, after Best and McCa-chren had entered into the partnership agreement and during construction on the property. As McCachren has not contradicted the testimony in this regard, we find that the chancellor’s decision not to include this inventory was reversible error.
¶ 13. Best also asserts error in the chancellor’s failure to consider an adjustment for the “devaluation of the partnership property done by McCachren.” This refers to the incident where McCachren unplugged the electrical meter to the building and cut the wires to the meter box. An expert in electrical repair testified that it would cost approximately $7,500 to repair the building. Best admitted that McCachren gave him meat from the store, valued at approximately $1,000, before it could spoil. We find that to the extent the valuation of the improved real property was decreased as a result of McCachren’s actions, it should be taken into consideration on remand.
II. WHETHER THE CHANCELLOR ERRED IN NOT ORDERING A PARTITION BY SALE OF THE PROPERTY.
¶ 14. The chancellor was asked by the parties to dissolve the partnership and partition the jointly owned property. Although he dissolved the partnership, the chancellor did not partition the property as requested but, rather, fashioned a unique remedy not sought by the parties. When asked by the chancellor, both parties agreed that it would be extremely difficult to partition the property in kind. However, Best contends that it was error for the chancellor not to order a partition by sale.
¶ 15. Best cites to Murphree v. Cook, 822 So.2d 1092 (Miss.Ct.App.2002), where this Court held that the chancellor’s failure to partition the property was an abuse of discretion. We stated:
[I]n every case that the chancellor proposes to subvert the detailed statutory procedures for a partition in favor of some ad hoc means of sale, especially when it is undertaken over the strenuous objection of one of the co-tenants, that decision would be subject to being set aside on appeal on an abuse discretion standard. See McNeil v. Hester, 753 So.2d 1057, 1063 (¶ 21) (Miss.2000). In this case, the chancellor set the price to divest Murphree of his interest as the original purchase price of the property. The purchase had occurred some three and one-half years prior to the commencement of the partition action and there was no evidence that this figure accurately reflected the market value of the property at the relevant time. We conclude that this means of valuing the co-tenants’ respective interests in the property was entirely arbitrary and, thus, an abuse of discretion.
Because, under Cheeks v. Herrington, [523 So.2d 1033 (Miss.1988),] Mur-phree’s right to have his interest in the property set apart to him by a partition conducted according to the applicable statutes would seem to be preferred over some alternate plan devised by the chancellor, we find it necessary to reverse that portion of the chancellor’s judgment ordering Murphree to be divested of his fractional title by a procedure of the chancellor’s own making.
Id. at 1098-99 (¶¶ 21-22) (emphasis added). However, the situation in Murphree *361 is distinguishable from the present case, as the property was not a partnership asset but, rather, held by the parties as tenants in common without any agreement as to how the property was to be divided. Here, the property is undeniably an asset of the partnership.
¶ 16. To the extent that the procedure for winding-up partnership affairs is not set out in the partnership agreement, Mississippi statutory law controls.[2] In this case, there is nothing in the partnership agreement as to how the assets of the partnership were to be valued or liquidated upon the dissolution of the partnership. Further, neither party has provided any argument as to the proper interpretation of Mississippi Code Annotated section 79-13-807 (Rev.2009), part of the Mississippi Uniform Partnership Act (1997), to this case. Section 79-13-807 states, in pertinent part, that:
(a) In winding up a partnership’s business, the assets of the partnership, including the contributions of the partners required by this section, must be applied to discharge its obligations to creditors, including, to the extent permitted by law, partners who are creditors. Any surplus must be applied to pay in cash the net amount distributable to partners in accordance with their right to distributions under subsection (b).
(b) Each partner is entitled to a settlement of all partnership accounts upon winding up the partnership business. In settling accounts among the partners, profits and losses that result from the liquidation of the partnership assets must be credited and charged to the partners’ accounts. The partnership shall make a distribution to a partner in an amount equal to any excess of the credits over the charges in the partner’s account. A partner shall contribute to the partnership an amount equal to any excess of the charges over the credits in the partner’s account but excluding from the calculation charges attributable to an obligation for which the partner is not personally liable under Section 306.
(Emphasis added).
¶ 17. Although there are no cases on point in Mississippi that interpret this statute, the issue was addressed in HoRNe v. Aune, 130 Wash.App. 183, 121 P.3d 1227 (2005), where the Washington Court of Appeals considered the property division of a partnership under that state’s applicable statute governing the dissolution or “winding-up” of a partnership. We find the Washington statute discussed in that case to be essentially identical to Mississippi’s section 79-13-807. In that case, the central issue was whether the statute required “a public sale of partnership property to wind up a partnership[,] .... as opposed to permitting a partner to purchase the property, with cash payment to the other partner of his interest.” Id. at 1231-32 (¶¶ 29, 39). The appellate court determined that the “phrase ‘liquidation of the partnership assets,’ guarantees partners the right to receive, in cash, the fair value of their property interest upon winding up and dissolution of the partnership. *362 But that result may be achieved by means other than forced sale.” Id. at 1234(¶ 49). The court in Home noted that sometimes “liquidation equaled forced sale because that was deemed the most accurate method of valuing partnership assets.” Id. Therefore, while a forced sale is certainly a viable remedy for the liquidation of assets, especially when an accurate valuation of the assets is difficult to determine, it not required under the statute.
¶ 18. Accordingly, we reverse the chancery court’s judgment and remand this case for a liquidation of the partnership real estate pursuant to section 79-13-807, which may necessitate a forced sale of the improved real property. The further “winding-up” of the partnership shall take into consideration the additional partnership contribution by Best of his mother’s inventory and any decrease in value to the real estate due to McCachren’s cutting of the electrical lines and removal of the meter box.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF YALOBUSHA COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.

. Best argues that the amount overstates what was paid as it includes double contributions, including both the invoice and the check payment. However, we find nothing in the record to support Best's claim.

. Mississippi Code Annotated section 79-13-103(a) (Rev.2009) provides that: “Except as otherwise provided in subsection (b), relations among the partners and between the partners and the partnership are governed by the partnership agreement. To the extent the partnership agreement does not otherwise provide, this chapter governs relations among the partners and between the partners and the partnership.” Mississippi Code Annotated Section 79-13-807 (Rev.2009), regarding the winding-up of partnership affairs, "is not one of the non-waivable provisions listed” in subsection (b), although 79—13—103(b)( 10) provides that the agreement may not "restrict rights of third parties[.]” See generally Brom-berg and Ribstein on Partnership, Vol. II, § 7.10(d) n. 23, 7:148 (2006).