BUTLER *v.* FURR *et al.*

(Division A. Jan. 29, 1934. Suggestion of Error Overruled Feb. 26, 1934.)

[152 So. 277. No. 30363.]

W. E. Gore, of Jackson, for appellant.

P. H. Lowrey, of Marks, for appellees.

Argued orally by **W. E. Gore**, for appellant, and by **P. H. Lowrey**, for appellees.

**McGowen, J.**, delivered the opinion of the court.

The parties to a partition suit in the chancery court of Quitman county each took under the will of their

kinsman as follows: To Mrs. K. M. Butler was devised for life, with remainder to the issue of her body, a seven-fifteenths interest, or three hundred fifty acres; to Jessie May Chrestman, now Mrs. Furr, and S. I. Chrestman, her brother, now dead, was devised an undivided four-fifteenths interest, or two hundred acres, and to Hal and Sallie Shannon was devised an undivided four-fifteenths, or two hundred acres—all of a seven hundred fifty-acre tract of land known as the "Desmond Place" in Quitman county, Mississippi.

After the death of the testator, the land was held by the above-named parties as tenants in common until November, 1918, at which time the several sets of devisees undertook to go into possession of certain tracts of said land in severalty.

In 1928, Mrs. Furr and her brother, S. I. Chrestman, and the Shannons, exhibited their petition in the chancery court for a partition of the entire tract of land denominated as the "Desmond Place."

Mrs. K. M. Butler filed her answer to the petition in which she denied that they were, at any time tenants in common, setting up that, in November, 1918, the lands had been partitioned by setting aside one share, consisting of two hundred acres, to Mrs. Furr and her brother, S. I. Chrestman, one share, consisting of two hundred acres, to the Shannons, and one share, consisting of three hundred fifty acres, to Mrs. Butler, and alleging that a survey, map, and plat of the land was made, and that at all times subsequent the devisees had remained in separate control and possession of the land under the oral agreement in 1918.

By way of cross-bill, Mrs. K. M. Butler alleged that, if the original oral partition made in 1918 was to be disturbed, she had made a large amount of improvements on her share, and she asked for an accounting as to such improvements.

To this cross-bill, the Shannons, Mrs. Furr, and S. I.

Chrestman filed answers, setting up that, if improvements were to be accounted for, there should be an accounting for rents as between all the parties.

At a partial hearing of the cause, it was disclosed that S. I. Chrestman, who had just attained his majority, and who is now dead, having died during the pendency of this cause, and J. M. Butler, the husband of Mrs. K. M. Butler, met together and agreed that a partition of the land ought to be had, and they had set aside to Mrs. Butler three hundred fifty acres, to the Shannons two hundred acres, and to Mrs. Furr and S. I. Chrestman two hundred acres, describing it. A very full and complete map was prepared by a competent surveyor showing the general state of the land, its acreage, cultivation, etc. J. M. Butler testified that, at the time of this partition, young Chrestman exhibited to him a letter in which the Shannons requested Chrestman to act for them in a division of the land, but this was denied by the Shannons.

The proof tended to show that in this partition the lands allotted to Mrs. Butler and to Mrs. Furr and her brother were about of equal value, but the weight of the evidence is to the effect that the lands allotted to the Shannons were not as valuable as that of the others. The proof is undisputed that, from the time of the oral partition of the land late in 1918 or early in 1919, the parties went into possession of the several tracts of land so partitioned, and in all respects handled it as if they had deeds thereto.

Upon this showing, the court below ordered a partition of the land in kind, appointed three commissioners for that purpose, and wholly ignored the former partition and occupancy by the parties of the several tracts of land, which they had improved as they thought best, by erecting such houses thereon as were suitable for the Delta raising of cotton. These commissioners made a new survey, and had a new map prepared, and they partitioned the land without regard to the improvements, and ignored

the several tracts of land which had been in possession of the several parties under the oral agreement made in 1918. The court approved and confirmed the report of the commissioners, and vested title in the several parties, as set forth in the report. The court found, however, that an accounting was necessary, and appointed a commissioner to make and state an account of rents and improvements, and retained the cause for a final decree upon the coming in of the report of the commissioner. There was some delay on the part of the commissioner in making and stating an account, whereupon the Shannons, Mrs. Furr, and S. I. Chrestman filed a motion to discharge the commissioner so appointed for the reason that no rents or improvements, under the facts of the case, were due to any of the parties, which motion the court overruled. The commissioner filed his report, which we believe sets forth the improvements remaining on the land in 1929 and all rents collected by the several parties on the tracts of land involved.

After adding all the rent collected from the three shares of land and subtracting the amount of improvements, therefrom, it was found, and the court decreed, that Mrs. Butler should pay to Mrs. Furr, one thousand six hundred ninety dollars and thirty-eight cents and to the Shannons, four thousand five hundred sixty-three dollars and forty-eight cents, fixing a lien upon Mrs. Butler's land for the payment of said sums.

The record shows that the Shannons had not personally supervised their farm, and, on the other hand, Mrs. Butler's interest was carefully managed by her husband, and that the Shannons had allowed forty acres in cultivation in 1918 to ''grow up'' and become a wilderness.

From this decree, an appeal is prosecuted here; there being no appeal prosecuted at the time the decree was rendered approving and confirming the commissioners' report on the partition in kind of said land.

The appellee insists that the decree confirming the re-

port of the commissioners on the partition of the land is not before the court, but cites no authority to sustain this contention.

We are of opinion that the merits of this case were not finally adjudicated until the equities between the parties were finally disposed of, and that the appeal from the decree disposing of the equities is a final decree, and operates to bring into review all the preliminary and interlocutory decrees prior to the final decree.

A decree of partition of real property, upon the report of commissioners, may be confirmed as authorized by section 2931, Code 1930. Section 2923, Code 1930, vests in the chancery court authority to settle all controverted details and all equities between parties to a partition suit, as well as all claims. When the case at bar, confirming the report of the commissioners as to the partition of the land, was specially retained by the court to settle the equities and claims between the parties, we think that was error. Section 2936, Code 1930, provides that "The final decree of the chancery court in partition proceedings shall ascertain and settle the rights of all parties; and it, and the decree confirming the partition, shall constitute an instrument of evidence in all questions as to the title of the lands which may be the subject of the decree, in all courts, and shall be conclusive as to the rights of all parties to the suit, and subject to appeals and bills of review, as in other suits, and to a repartition as provided." This language seems to relieve the statute of all doubt and to make it certain that the decree in the case at bar settling the equities and claims between the parties was a final decree.

In a proceeding to partition land between tenants in common, sections 2925 and 2930, Code 1930, distinctly permit either the chancellor or the commissioners to provide owelty, where that is practical in making awards to several tenants in common. The decree appointing the commissioners did not so advise them, and the partition

seems to have ignored the fact of the separate, exclusive occupancies of the land by the parties to this litigation and the improvements thereon. Each set of owners was an improver of the separate tract of land into which they went into exclusive possession.

In the case of Bennett v. Bennett, 84 Miss. 493, 36 So. 452, this court held that a tenant in common who has improved a portion of the land equal in area to his proportionate share on partition in kind should have the same allotted to him; and that a tenant in common who has improved a portion of the land of greater value than his proportionate share is entitled to have the same allotted to him upon partition in kind, subject to contribution by him to his cotenants.

It does not seem to us that it would have been difficult to have complied with the rule announced in the Bennett case by ascertaining the value at the time each of the cotenants went into possession of his respective share therein in area. It was the duty of the court, however, to have ascertained whether this plan was practical.

As stated, these parties, farming the lands in 1919, went into exclusive and separate possession of their respective shares and cultivated the land as they pleased, treating it as their own; and hence they are now estopped to claim rent from each other. It plainly appears here that, by the method adopted by the court in confirming the report of the commissioners, requiring Mrs. Butler to share the rents of her entire acreage, no effort was made to ascertain the value of the excess in area of which she took possession. She cultivated her land in a businesslike manner, while the Shannons, as shown by the record, neglected theirs; consequently, under the facts, no accounting for rent was due.

If, upon another trial of the case, it should be developed that it is not practical to comply with the rule in the Bennett case, and that, in order to equalize the shares, a new partition will have to be made whereby an im-

prover will be required to surrender to another a valuable improvement, which, at the time of the partition, enhances the particular lot or tract of land, then an accounting should be had as to such improvement, and only in that event.

Further, in our judgment, if the rule in the Bennett case is followed, and each improver is put into posession of the land he has improved, then there should be no accounting for improvements.

We leave open the question as. to whether or not, under the proof as it shall be developed, the court should assign the lots of land improved by the occupants to them; we do say that an effort should be made by the court to so allot the land herein to the owners so as to put them in possession of that land occupied, controlled, and improved exclusively by them for so long a time.

Reversed and remanded.