878 So.2d 1052 (2004)
In the Matter of the LAST WILL AND TESTAMENT OF Mary Ellen LYNN, Deceased.
James E. Lynn, Sr., Appellant/Cross-Appellee
v.
Grace Lynn, Johnny Lynn, Jerry Lynn, Raymond Lynn, George Lynn, Patricia Barnes and Frances Holliday, Co-Executrixes of the Estate of Mary Ellen Lynn, Appellees/Cross-Appellants.
No. 2001-CA-00922-COA.
Court of Appeals of Mississippi.
July 20, 2004.
*1053 C. Ashley Atkinson, attorney for appellant.
Lee Davis Thames, Jackson, Harry Jones Rosenthal, attorneys for appellees.
EN BANC.
BRIDGES, P.J., for the Court.
¶ 1. The estate of Mary Ellen Lynn consisted primarily of fifty acres in Warren County, Mississippi. It was Mary's wish that this property be divided among her eight children. Since Mary's death in December of 1990, Mary's children have been in dispute over the partition of this property. A special commissioner was called on to conduct surveys and equitably divide the property. The fourth report of the special commissioner was the final report approved by the chancellor.

STATEMENT OF THE ISSUES

I. DID THE CHANCELLOR COMMIT MANIFEST AND REVERSIBLE ERROR BY ORDERING A FURTHER PARTITION OF THE MARY ELLEN LYNN ESTATE BY THE SPECIAL COMMISSIONER WITH SPECIFIC INSTRUCTIONS AS TO HOW TO MAKE THE PARTITION OF THE PROPERTY IN A MORE EQUITABLE MANNER?

II. DID THE CHANCELLOR COMMIT REVERSIBLE ERROR IN HOLDING THERESA LYNN IN CONTEMPT OF COURT?

ISSUE ON CROSS-APPEAL

THE CHANCELLOR ERRED IN FINDING THE ESTATE HAD NO ASSETS WITH WHICH TO PAY ATTORNEY FEES.

FACTS
¶ 2. Mary Ellen Lynn died on December 22, 1990, in Warren County, Mississippi. She was predeceased by her husband and had eight living children at the time of her death: Fred R. Lynn, Johnny Lynn, Jerry Lynn, Raymond Lynn, George Lynn, James E. Lynn, Patricia Barnes, and Frances Holliday. Mary Ellen's will appointed Patricia and Frances co-executrixes of the estate. It was the wish of Mary Ellen to devise her fifty acres of land in Warren County to her eight children. In the initial filings of the estate Johnny was accidentally omitted as an heir, but that mistake was later corrected.
¶ 3. Division of the land is difficult since the property is along the Mississippi River and floods approximately every ten years. The property has a main road, LeTourneau Road, which runs through it and an "old home place" road which gives access to the river. Each heir desired access to both roads. The division is further complicated *1054 since Johnny, James and George had constructed dwellings and improvements on the land prior to Mary Ellen's death. Incidentally, the court determined that the value of these improvements should not be considered since they actually detract from the value to the land as a whole rather than increase the value. Finally, Raymond sold James his interest in the property so that James' two parcels had to be adjacent.
¶ 4. In August of 1995 Chancellor Barnes determined that the estate should not be closed until the real property was partitioned among the heirs. Lucius Dabney was appointed Special Commissioner by the court and was granted authority to hire a surveyor. The heirs were ordered not to interfere with either Dabney or his surveyor during the completion of their duties. Dabney filed his first report in October of 1996, and the heirs filed objections to it. Their objections were that George did not have access to the Mississippi River and that James had a disproportionate amount of frontage on LeTourneau Road.
¶ 5. In September of 1997, Dabney filed his second report and a few heirs again filed objections. In a hearing to consider the second report, the contention between this family was so severe that an attorney for one party noted that the heirs would never agree to every aspect of a partition. At this hearing the chancellor entered an order prohibiting the heirs from doing any more bulldozer work and prohibiting the heirs from taking action which would encroach on the proposed parcels of each heir.
¶ 6. In April of 1999, James filed a motion to recuse Chancellor Barnes. That motion was granted and the Mississippi Supreme Court appointed Donald B. Patterson as special chancellor. Several complaints of contempt were filed back and forth between the heirs. Many of these complaints involved James for improving or adding onto the property in violation of the prohibition from the chancellor, for his blocking the "old home place" road, for prohibiting others access to the Mississippi River, and for his keeping of junk cars on the property. Another contempt complaint was filed against James' wife for interfering with the surveyors and their ability to properly conduct the survey.
¶ 7. In May of 2000, Dabney filed his third report attempting to equally partition the property. A hearing was held in July to consider the heirs' objections to the new report. Their primary complaints were the inequitable amount of frontage each was given along LeTourneau Road, the failure to include "old home place" road in the division, and some parcels were completely low-lying. James received 297.55 feet of frontage on LeTourneau Road with his two parcels, Johnny received 25.03 feet, and Patsy received 48.51 feet.
¶ 8. In the chancellor's August 2000 bench ruling, he rejected the third report proposed by Dabney and dictated additional considerations necessary for the forth and ultimately final report from Dabney, the special commissioner. The chancellor found that some of the parcels had almost no value but noted that dividing the land equally in value was impossible considering the improvements Mary Ellen had allowed heirs to construct prior to her death. He instructed Dabney and his surveyor to divide the property as equitably as possible with the following considerations: (1) The special commissioner should determine what structures were constructed prior to Mary Ellen's death and which ones were done in bad faith, like additions made to his barn by James. (2) The special commissioner should include the "old home place" road and James and Johnny should unblock the road and driveway to *1055 allow access. (3) The special commissioner should also consider the low areas and drainage problems throughout the property.
¶ 9. In October 2000, the special commissioner and surveyor requested a temporary restraining order and sheriff protection after they were denied access to James' property by his wife. The chancellor granted these orders, and the other parties requested the additional costs arising from the actions of James' wife be paid by her and not the estate.
¶ 10. The fourth report of the special commissioner was filed in December of 2000 and contained the changes the chancellor requested in the third report. The chancellor held judgment against the estate based on this report, and the Mississippi Supreme Court denied James' request for an interlocutory appeal. The chancellor required Theresa, James' wife, to pay the expenses incurred when she ran the surveyors off the property, and the chancellor did not allow the co-executrixes attorney fees from the estate since the estate was practically insolvent with the partitioned property as its only major asset.

ANALYSIS

I. DID THE CHANCELLOR COMMIT MANIFEST AND REVERSIBLE ERROR BY ORDERING A FURTHER PARTITION OF THE MARY ELLEN LYNN ESTATE BY THE SPECIAL COMMISSIONER WITH SPECIFIC INSTRUCTIONS AS TO HOW TO MAKE THE PARTITION OF THE PROPERTY IN A MORE EQUITABLE MANNER?
¶ 11. The standard of review for property partition cases is whether this Court finds manifest error in the decision of the chancellor, only then will this Court reverse the findings of the chancellor. Robberson v. Burton, 790 So.2d 226(¶ 9) (Miss.Ct.App.2001) (citing Dunn v. BL Dev. Corp., 747 So.2d 284, 285(¶ 8)(Miss.Ct.App.1999)).
¶ 12. James argues the chancellor did not have authority to reject the third report of the special commissioner nor did he have authority to give the special commissioner specific instructions on how to reach a decision on how to partite the property. James believed the third report of the special commissioner, giving him 297.55 feet of frontage, was not manifestly wrong since it complied with the agreed upon instructions of the parties.
¶ 13. James cites to a line of cases granting widows and tenants in common the right to their improvements during a partition of the property, if practical. Bennett v. Bennett, 84 Miss. 493, 36 So. 452 (1904), Butler v. Furr, 168 Miss. 884, 891-892, 152 So. 277, 279 (1934), Carter v. Brewton, 396 So.2d 617, 618-19 (Miss.1981). Butler held that if it is impractical to allot improvements made by a widow to the widow herself in the partition of property, an accounting should be made of those improvements. James compares the improvements he made, a home with a barn and equipment shed, and the improvements made by George and Johnny, to those improvements in the above cases made by widows and tenants in common. It is James' belief that he is entitled to the improvements made before the death of Mary Ellen and the partition should accommodate them.
¶ 14. Mississippi Rule of Civil Procedure 53(g)(2) allows the chancellor to reject the ruling of the special commissioner if he believes the ruling is manifestly wrong or objected to within ten days. A report was filed by the special commissioner on May 26, 2000, objections to the report were filed on June 19,2000, and Judge Patterson entered the bench ruling in *1056 question on August 2, 2000. The report entitled "Third Report of Special Commissioner" was not filed until October 16, 2000, and the purpose of that filing was to request additional time to complete the requested changes to the May 26, 2000 report.
¶ 15. The objections to the May 26, 2000 report brought by the family members were beyond the ten day time period specified in the Rules of Civil Procedure. Therefore, the only permissible method of rejecting to the report was if the chancellor found the report manifestly wrong. The objections raised by Patricia, Frances and Johnny were: (1) the amount of frontage awarded to the heirs was disproportionate; (2) the "old home place" road, which is actually the old driveway to the original home on the property which is now destroyed, this road was overlooked and was included in the parcel given to James; (3) the partition also does not include a gravel road used to connect Johnny, Frances and Patricia's homes to the old home place of Mary Ellen; (4) the property received by Jerry and Patricia was low-lying and Patricia's parcel was in actuality a drainage ditch and any attempts by her to divert water would flood the property of another, and (5) the survey contained structures built after the death of Mary Ellen.
¶ 16. The fourth report of the special commissioner was filed on December 1, 2000, and was later accepted by the chancellor in his judgement on April 26, 2001. Several objections to the report were filed and, in what this Court believes was in an interest of finality, the chancellor addressed some issues with modifications in his judgment of the fourth report.
¶ 17. It is typical to partition a parcel of property "as the special commissioners may think proper, having regard to the situation, quantity, quality and advantages of each part or share, so that they may be equal in value as nearly as may be, or according to the respective rights of the parties." Miss.Code Ann. § 11-21-25 (Rev.2000). While Mississippi Code Annotated section 11-21-25 gives the chancellor the right to either modify or confirm the reports of a special commissioner, Mississippi Rule of Civil Procedure 53(g)(2) established the standard for modification requiring the report being manifestly wrong.
¶ 18. It is the opinion of this Court that the chancellor did not err in objecting to the report of the special commissioner filed on May 26, 2000, or in making modifications to the fourth report filed on December 1, 2001. We believe the gross inequity of the parcels of property was evidenced through the amount of frontage, division of the low-lying areas, the ability for all parties to have usage of the roads and access to the river is sufficient to meet the standard for modification required under Mississippi Rule of Civil Procedure 53(g)(2). The chancellor in his bench order did not direct the special commissioner as to how to divide the parcels but merely gave him some directions. These directions merely highlighted the problems in equity as he saw them in the hope that they would be addressed in the next report. The decision of the chancellor is affirmed.

II. DID THE CHANCELLOR COMMIT REVERSIBLE ERROR IN HOLDING THERESA LYNN IN CONTEMPT OF COURT?
¶ 19. The specifics of how the surveyors were asked to leave the property of James and Theresa Lynn is in debate. However, the surveyors did have to leave before starting or completing their work and felt the need to request both a temporary restraining order and sheriff protection to complete their task. The finding of contempt by the chancellor ordered Theresa *1057 responsible for the additional costs incurred as result of her actions. An amount that was later assessed as $1,377.25.
¶ 20. There was a standing order almost since the appointment of the special commissioner, notable as early as August of 1995, that no party should interfere with the commissioner or his surveyors and the completion of their tasks. The bench ruling of August 2, 2000 required the commissioner to consider and add the "old home place" road to his survey and division of property. James was aware of this bench ruling, as evidenced by the objection to it he filed. Since this road was solely contained on James' property he should have been more than aware surveyors would be entering his property.
¶ 21. Mississippi Rule of Civil Procedure 65(d)(2) states that an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." The standard of review for a trial court's imposition of sanctions is whether or not the trial court abused its discretion. Wyssbrod v. Wittjen, 798 So.2d 352, 357 (Miss.2001). The injunction issued by the chancellor refers only to the parties and Theresa is not a party to this action, nor is she the servant, agent, officer, employee or attorney. Theresa was in active concert and participation with James and, therefore, in order for this injunction to be binding and enforceable on Theresa the chancellor should have had Theresa personally served with notice of the injunction in compliance with Mississippi Rule of Civil Procedure 65(d)(2). Therefore, we reverse the chancellor's decision holding Theresa Lynn in contempt of court.

ISSUE ON CROSS-APPEAL

THE CHANCELLOR ERRED IN FINDING THE ESTATE HAD NO ASSETS WITH WHICH TO PAY ATTORNEY FEES.
¶ 22. "The decision whether to award attorney's and executrix's fees is a matter addressed to the sound discretion of the chancery court. In the absence of an abuse of that discretion, this Court will not disturb the chancellor's rulings." Estate of Collins v. Collins, 742 So.2d 147, 149(¶ 3) (Miss.Ct.App.1999).
¶ 23. The chancellor ruled that, while the expenses incurred by the estate were reasonable, valuable and necessary, the estate has no assets with which to award attorney's fees, finding that the estate was "defacto insolvent." The co-executrixes wish to recover only those attorney's fees incurred in the administration of the estate, not the partition of the property.
¶ 24. In their cross-appeal the co-executrixes claim the chancellor did not follow proper procedure for determining an estate insolvent as stated in Mississippi Code Annotated sections 91-7-261 and 91-7-265. It is their belief that the real property of the estate should also be considered in determining insolvency. Mississippi Code Annotated section 91-7-191 allows the sale of land in an estate where there is insufficient personalty to pay the debts and expenses of the estate.
¶ 25. James, Johnny and George have declared the portion of the estate they are to inherit as a homestead exemption. Also, the determination of whose parcel of property should be sold to pay the attorney's fees would be too litigious. Attorney's fees are the responsibility of the executrix and they may be paid out of the estate. Scott v. Hollingsworth, 487 So.2d 811, 813 (Miss.1986). Since paying these expenses out of estate assets is not *1058 mandatory and is within the discretion of the court, we rule that the chancellor did not abuse his discretion in denying the payment of attorney's fees from the estate assets.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED IN PART AND REVERSED IN PART ON DIRECT APPEAL AND AFFIRMED ON CROSS-APPEAL. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., SOUTHWICK, P.J., LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.