257 N.J. Super. 75 (1992)
607 A.2d 1349
HELEN PROSTAK, PLAINTIFF-RESPONDENT/CROSS-APPELLANT,
v.
JOHN AND SOPHIE PROSTAK, DEFENDANTS-APPELLANTS/CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 18, 1991.
Decided June 11, 1992.
*77 Before Judges PETRELLA,[1] R.S. COHEN and ARNOLD M. STEIN.
Robert F. Danziger argued the cause for appellants/cross-respondents (Large, Scammell & Danziger, attorneys; Robert F. Danziger on the brief).
Robert I. Kuchinsky argued the cause for respondent/cross-appellant (Robert I. Kuchinsky, P.A., attorney; Robert I. Kuchinsky on the brief).
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
Defendants appeal the Chancery Division's order of partition adopting the recommendation of the commissioner appointed pursuant to R. 4:63-1. Plaintiff cross-appeals the denial of interest on the delayed payment of owelty, the valuation difference after partition. She also appeals the granting to defendants of a life estate for the use of a shale road placed on her side of the partition line.
We reverse because the trial judge did not conduct an evidentiary hearing to permit defendants to challenge the commissioner's recommended partition line and the real estate valuations contained in the appraisals attached to his report. We also reverse the denial of interest for the delayed payment of owelty.
Plaintiff Helen Prostak is the sister-in-law of defendant John Prostak. She is a tenant in common with John and his wife *78 Sophie in the disputed property. John and Sophie are tenants by the entirety as to their one-half interest.
The property consists of 175 acres in Clinton Township. It is divided by County Road 629. The parties agreed to the sale of the land on the west side of the road, but could not agree on a partition line for the remaining property on the other side, where the residences of both parties are located. Each party wanted to retain seven to ten acres surrounding the homestead and outbuildings. Each residence has access from the county road by a driveway. A shale farm road leads from the county road to an open field behind the buildings, dividing each residence and approximately one-half of the outbuildings.
Because the parties could not agree upon a dividing property line, the judge appointed a commissioner pursuant to R. 4:63-1:
If in an action for partition ... the court shall be satisfied that a division of the real estate can be made without great prejudice to the owners thereof, it may appoint one or more persons as commissioners to ascertain and report in writing the metes and bounds of each share....
The order of appointment directed the commissioner
to divide the part or share of lands and premises allotted to the Plaintiff and Defendants as aforesaid into two equal parts or shares, each equal in value to the other, quantity and quality being respectively considered and to allot one of said parts or shares to the Plaintiff and to be held and enjoyed by her and the other such part or share to the Defendants according to their respective rights and interests therein, as adjudged and declared by this Court.
The commissioner proposed dividing the property into two seven-acre parcels, each containing a dwelling house and outbuildings. He recommended that the shale road be located on plaintiff's side of the partition line, because although defendants had access to their residence and their outbuildings from the farm road, those
structures could readily be accessed otherwise from John Prostak's dwelling side.
....
If the ownership of the old farm road were not with [plaintiff's] parcel, the adjoining tract could increase the intensity of use of that road and the noise and dust could then adversely affect the usability of the northerly side of her dwelling and side yard. Additionally, the present access to the brick cow barn, silos and hay barn would have to be relocated and constructed.
*79 He recommended that defendants be given a "life right to continue to use the old farm road only for access to" outbuildings.
The appraiser hired by the commissioner valued plaintiff's proposed property at $356,500: $109,451 for the dwelling, $32,049 for the outbuildings and $215,000 for the land. He valued defendants' proposed parcel at $362,000: $38,000 for the dwelling, $9,185 for the outbuildings and $315,000 for land including an extra site value of $100,000 because, in the appraiser's opinion, the property was easily subdividable into two three-acre+ lots. He rounded this figure to $362,000 for valuation purposes.
After receiving the commissioner's report, the judge notified counsel for both parties that any objection should be in the form of a motion to suppress the report. Counsel for John and Sophie filed a motion to suppress, mainly objecting to the placing of the old farm road entirely on Helen's property with its lifetime rights of limited access, and the addition of $100,000 to the land valuation of their property because of the supposed availability to them of subdivision.
Plaintiff's attorneys cross-moved, objecting primarily to the granting of a life estate to defendants over the shale road.
On August 9, 1990, defendants' attorney wrote the trial judge a lengthy letter which concluded:
"It is my impression that the hearing on August 31st will be limited to arguments by counsel on their motions to suppress the Report of Commissioner. If we will be given the opportunity to present testimony, please have your office so advise me." (emphasis added).
Counsel enclosed an affidavit from a planning consultant which forecast that by early 1991 the entire Prostak property would probably be rezoned, with minimum lot sizes increased from 3.5 to 10 acres, making defendants' lot unsubdividable. The certification also stated that a proposed road widening of County Road 629 in front of defendants' property would probably require acquisition of some land, leaving one or both of the *80 resulting lots undersized, even under current zoning regulations.
The commissioner responded:
My report was prepared before the newspapers had reported the proposed considerations of changes to the Master Plan. There are no copies available of the Planning Board recommendation at this time according to the Planning Board Secretary. Whether or not a 10 acre density is established, John Prostak could have his two 3.5 acre parcels upon the signing of the Court Order. If those who read the newspaper account, including Ryman Herr, Jr., are successful in their objections to the Planning Board and Township Committee, this high density may never become effective. But as the law is today, the value exists for another 3.5 acre parcel.
... [B]oth Prostaks should be objecting to a 10 acre density requirement as will be other landowners in that area and that John Prostak should take the two 3.5 acre parcels by the Court Order and add value to his estate at this time and continue their farming activity for their remaining years if that is their intention. The penalty of rollback taxes as it is now being imposed could be a real hardship in the future if they did secure farmland assessment and then had a rollback tax liability.
The judge never responded to defendants' request for an evidentiary hearing. On the return day, he heard the matter on the moving and responsive papers, and after oral argument, not only accepted the commissioner's recommendation as to placement of the partition line but also adopted the property values in the appraisals attached to the commissioner's report. He ruled that defendants' property should be valued as if it could be subdivided into two 3.5-acre lots because "[t]he property of the defendants in this case is capable of subdivision at this time and, therefore, the adjustment which was proposed is an appropriate one." The judge stated that upon defendants' request he would partition plaintiff's parcel into two 3.5-acre lots "creating the subdivision by judgment of the court." Presumably, the judge was referring to N.J.S.A. 40:55D-7 which provides that divisions of property upon court order are not included within the definition of "subdivision" within the meaning of the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq. He ruled that payment of the $5,500 owelty due plaintiff by defendants as a result of the valuation difference be delayed until the agreed sale of the property on the other side of the road.
*81 Before the judgment of partition was signed, defendants' counsel requested the court to reconsider the matter. He enclosed a realtor's report stating that even if a 3.5-acre lot could be subdivided from defendants' homestead, it would bring a market value not greater than $80,000, considerably less than the valuation made by the appraiser used by the commissioner. By letter dated October 1, 1990, defense counsel said:
No judgment has been entered as the result of the August 31, 1990, hearing. It would be appropriate to allow all parties to present expert testimony and that a final decision be delayed until that additional evidence is before the court.
The judge did not respond to this letter. Instead, he signed the judgment for partition submitted by plaintiff's counsel, which divided the property into one 7-acre lot for plaintiff and two 3.5-acre lots for defendants.
The trial judge apparently felt that he was bound by the recommendations of the commissioner unless his report was the product of fraud or some grievous mistake. He was incorrect. The dispute over valuation required him to conduct a plenary hearing. Once the valuation figures in the appraisals become a matter of legitimate dispute, they were subject to challenge in an evidentiary hearing. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954) (where there is disputed question of material fact, summary judgment must be denied); Conforti v. Guliadis, 245 N.J. Super. 561, 565, 586 A.2d 318 (App.Div. 1991) (trial court may not decide contested issues of material fact on basis of conflicting affidavits); Fusco v. Fusco, 186 N.J. Super. 321, 327, 452 A.2d 681 (App.Div. 1982) (visitation dispute cannot be resolved on basis of conflicting papers without benefit of examination and cross-examination of expert witnesses).
The judge relied upon two ancient cases as the basis for his conclusion that he was permitted to accept without challenge the entire contents of the commissioner's report. In Bentley v. Long Dock Company, 14 N.J. Eq. 480 (Ch. 1862), the Chancellor stated:

*82 If the commissioners had proceeded to make partition, their action would have been conclusive after the expediency and propriety of that cause of action, and equally conclusive upon the motive making the partition, unless an error is clearly shown. Id. at 489.
In Hay v. Estell, 19 N.J. Eq. 133 (Ch. 1868), the Chancellor held:
The court will set aside and quash the return of commissioners of partition, when the partition has been made upon wrong principles, or in disregard of the rights of the parties, where there is great and evident inequality in the division. But to set aside a partition for mere inequality, when there is no partiality or improper conduct of the commissioners, the proof must be clear and the inequality considerable. Id. at 135.
It is inconceivable that commissioners appointed for the limited purpose of recommending a dividing line through disputed property have virtually unfettered discretion to decide the location of that line and the value of the divided property. That would be an improper delegation of judicial responsibility. Indeed, in Hay v. Estell, supra, the Chancellor pointed out:
I cannot agree with the theory that commissioners are, like arbitrators, judges voluntarily chosen by the parties to decide between them and therefore they have to be concluded by their judgment, whether right or wrong, if not given corruptly, or through favor. Parties are compelled to make partition, as in this case, against their will, and the commissioners are appointed by the court.... Id. at 135-136.
The commissioner's report and the valuation figures of his appraiser are subject to challenge in an evidentiary hearing if they have been placed in legitimate dispute by an offer of contrary proof or demonstrated internal weakness. See Ierrobino v. Megaro, 108 N.J. Super. 556, 563, 262 A.2d 17 (Ch.Div. 1970) in which the trial judge ordered an evidentiary hearing as to the value of partitioned property in the event that the parties could not reach agreement on value.
At the very least, defendants should have been permitted to present testimony as to the value of their property, whether subdividable or not. The judge should have considered the effect of the proposed rezoning and potential road widening upon the fair market value of defendants' property. State v. Gorga, 26 N.J. 113, 116, 138 A.2d 833 (1958). Instead, he *83 addressed the problems of potential zone upgrading and road widening by making a lot line down the center of defendants' property, purportedly pursuant to N.J.S.A. 40:55D-7. This was incorrect.
Everyone agrees that the disputed property is divisible into two lots of equal size. It was improper to create an additional lot line further subdividing defendants' property. The statute does not permit an end run around a municipality's current or proposed zoning ordinance. It does not authorize creating internal lot lines for the purpose of enhancing the value of one of the resulting properties. It is obvious that the dividing line through the defendants' property was contrived, effectuated for the purpose of avoiding applicable land use regulations. As we said in a similar context in Mt. Laurel Township v. Barbieri, 151 N.J. Super. 27, 37, 376 A.2d 541 (App.Div. 1977):
A partition decree so motivated and unsupported by any evidential basis cannot be considered an exempt court-ordered subdivision. To hold otherwise would make a mockery of the municipal subdivision statute.
We specifically vacate that part of the order creating a lot line down the middle of the property of defendants John and Sophie Prostak.
Finally, interest should be calculated on any delay in owelty payment ordered by the court. The party owed the valuation difference is entitled to compensating interest during the period of delay as indemnification for the loss of what the money due him or her would have earned had payment not been delayed. County of Essex v. Waldman, 244 N.J. Super. 647, 667, 583 A.2d 384 (App.Div. 1990), certif. denied, 126 N.J. 332, 598 A.2d 890 (1991).
Reversed and remanded to the Chancery Division for an evidentiary hearing and for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Judge Petrella did not participate in oral argument. He participated in the final decision with consent of counsel.