910 So.2d 699 (2005)
Elroy NECAISE and Guy Necaise, Appellants,
v.
Nelda LADNER and Sharon Shaw, Appellees.
No. 2004-CA-00314-COA.
Court of Appeals of Mississippi.
March 15, 2005.
*700 Mark Thomas McLeod, Jackson, attorney for appellants.
Thomas Wright Teel, Biloxi, attorney for appellees.
Before LEE, P.J., MYERS and CHANDLER, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY AND FACTS
¶ 1. On February 10, 1999, Bessie Necaise deeded a parcel of property to her five children, subject to a life estate, as joint tenants with the right of survivorship. The children included Janell Wilson, Nelda Ladner, Elroy Necaise, Guy Necaise, and Sharon Shaw. Bessie died on July 20, 2000. Shortly thereafter, Guy moved into Bessie's house, which is located on the property in question, and lived there until January 2003, when he was removed from the house pursuant to a judicial order.
¶ 2. The situation over the property deteriorated between the siblings until Guy, Elroy, and Janell filed a complaint for partition of real property in the Hancock County Chancery Court on July 8, 2002. Nelda and Sharon, as the named defendants, filed their answer and affirmative defenses on August 19, 2002, and a counterclaim and motion for injunctive relief on October 1, 2002.
¶ 3. A hearing was held on September 17, 2003, at which time the parties consented to a partition of the property by sale. *701 The chancellor's judgment of partition was signed nunc pro tunc on September 26, 2003, wherein the chancellor ordered the property to be sold pursuant to statute and set out grounds for notice publication. The chancellor then appointed a Special Commissioner and a notice of Special Commissioner's sale was filed on October 1, 2003. This notice stated that the property would be sold at the Hancock County Courthouse on October 10, 2003. This notice was published once on October 3, 2003, in The Sun Herald, once in The Picayune Item on October 5, 2003, and for one week in The Sea Coast Echo on October 5, 2003. At the time of the sale, Sharon and her husband bid $20,000 for the property and were the highest bidder. Neither Guy nor Elroy were present at the sale.
¶ 4. On October 20, 2003, Guy and Elroy filed a motion to set aside the sale of land by partition asserting breach of the agreed terms of sale and gross inadequacy of price. Guy and Elroy filed an amended motion in December 2003. On October 30, 2003, the chancellor entered a judgment regarding other issues, including rental fees and personal property. There was another hearing on January 29, 2004, after which the chancellor instructed both parties to submit supplemental authority on the publication requirements issue. On February 3, 2004, the chancellor entered a judgment resolving other issues, including expenses and attorney's fees. On February 17, 2004, the chancellor dismissed Guy and Elroy's motion to set aside the partition sale. Guy and Elroy now appeal to this Court, asserting the following issues: (1) the correct publication requirements for sale of the property were not met; (2) the sale price of the property was inequitably low; and (3) the chancellor erred in assessing the appellees attorney's fees against the proceeds of the sale.

STANDARD OF REVIEW
¶ 5. This Court will not disturb findings of the chancellor unless the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1194 (Miss.1990).

DISCUSSION OF ISSUES

I. WERE THE CORRECT PUBLICATION REQUIREMENTS MET FOR THE SALE OF THE PROPERTY?
¶ 6. In their first issue, Guy and Elroy argue that the sale of the property as advertised was void because the correct publication requirements were not followed by the chancellor. The chancellor's order on September 26, 2003, stated the following: "A notice of sale shall be sent as a legal notice to the Sun-Herald and the Sea-Coast Echo to publish once for the sale date as to the property and buildings.. . ." The chancellor then continued to set other terms for the sale, including the date and the procedure. Although the chancellor did not specifically state so, the notice of sale was also published one time in The Picayune Item.
¶ 7. The statutes pertaining to the partition of land, Mississippi Code Annotation Sections 11-21-1 to 45 (Rev.2004), fail to state any specific publication requirements when property is to be sold. According to Mississippi Code Annotated Section 11-5-93 (Rev.2002):
Every sale of real estate ordered by a decree of any court of chancery shall be made for cash, unless otherwise ordered by the court, and at such place and on such notice as may be directed in the decree; and if direction be not given, at such place and on such notice as is required in case of sales of land under execution at law.
*702 (emphasis added). Furthermore, Mississippi Code Annotated Section 11-5-95 (Rev.2002), states that "[a]ll property may be sold on such terms and at such time and place as the court may direct." (emphasis added). Neither of these statutes states with particularity any publication requirements; they merely give the chancellor discretion in determining where the sale will occur and other conduct pertaining to the sale, including publication requirements. Here the chancellor ordered notice of the sale to be published in three newspapers. As sections 11-5-93 and 11-5-95 specifically give the chancellor the authority to set the terms of the sale, including publication requirements, we cannot find any error on the chancellor's part.
¶ 8. However, if the chancellor had not given any specific instructions as to the notice and publication requirements, then Mississippi Code Annotated Section 13-3-163 (Rev.2002), would then apply. Section 13-3-163 states that sales of land "shall be advertised by the plaintiff in a newspaper published in the county, once in each week for three (3) successive weeks, or, if no newspaper is so published, in some newspaper having a general circulation therein once in each week for three (3) successive weeks." As this was not the case, we find no merit to this issue.

II. WAS THE SALE PRICE OF THE PROPERTY INEQUITABLY LOW?
¶ 9. In their second issue, Guy and Elroy argues that the chancellor erred in denying the motion to set aside the sale of the property because of the inequitably low sale price. The supreme court has stated that:
After a sale of property by decree of the Chancery Court a mere increase of price or inadequacy of price at the time of sale, will not alone justify the court in setting it aside, although such inadequacy or increase in connection with unfairness, injustice or inequity in making the sale would be sufficient.
Bethea v. Rahaim, 196 Miss. 15, 20, 16 So.2d 633, 634 (1944). In Bethea the supreme court affirmed the lower court in setting aside the sale, finding that there was both an inadequacy in the sale price and unfairness as the Rahaims were not given notice of the time and place of the sale.
¶ 10. Guy and Elroy's only argument is that the failure to comply with the publication statute resulted in an inequitable sale price. Guy and Elroy assert that the advertisement period was too short; thus, there were an insufficient number of potential buyers at the sale. As we have previously found that notice was proper, we find no merit to this issue.
¶ 11. Chancellors may set certain safeguards in order for a land sale to be as fair as possible and, although we may have found the sale price to be low, nevertheless we cannot find an abuse of discretion.

III. DID THE CHANCELLOR ERR IN ASSESSING THE APPELLEES ATTORNEY'S FEES AGAINST THE PROCEEDS OF THE SALE?
¶ 12. In their last issue, Guy and Elroy argue that the chancellor erred in assessing the appellees attorney's fees against the sale proceeds. In his judgment dated September 26, the chancellor stated that he would reserve the issues of attorneys fees to Al Koenenn, attorney for Guy and Elroy, and Thomas Teel, attorney for Sharon and Nelda "as regards the partition." On October 31, the chancellor entered another order wherein he stated that, pursuant to Mississippi Code Annotated Section 11-21-31 (Rev.2004), the claims of the parties for attorney's fees should be denied. Section 11-21-31 states as follows:

*703 In all cases of the partition or sale of property for division of proceeds, the court may allow reasonable attorney's fee to the attorney or the plaintiff, to be taxed as a common charge on all the interest, and to be paid out of the proceeds in case of a sale, and to be a lien on the several parts in case of partition.
¶ 13. Furthermore, in a supplemental order dated December 4, the chancellor awarded attorney's fees in the partition matter to Koenenn in the amount of $6, 281.25 and to Teel in the amount of $9,607.50. There is no evidence in the record as to how these fees were determined and whether they were deemed reasonable by the chancellor. In a separate order dated December 4, the chancellor's allowed Koenenn to withdraw as counsel for Guy and Elroy and stated that Koenenn was to be paid his fees from the proceeds of the sale of the property.
¶ 14. However, in a judgment dated February 3, 2004, the chancellor stated that he was resolving some remaining issues, including attorney's fees. In his judgment, the chancellor notes Section 11-21-31 and cites O'Neill v. O'Neill, 551 So.2d 228 (Miss.1989), for the proposition that attorney's fees are not generally awarded in a partition matters where the defendants hire an attorney to represent their interests. The chancellor then ordered each party to bear his/her own costs and attorney's fees.
¶ 15. The general rule is that the application of Section 11-21-31 is discretionary, not mandatory, and that "where a defendant employs his own attorney in good faith to represent his interest or to assert his position in a controversy during a partition proceeding he should not be required to contribute to the fee of complainants' attorney." Parnell v. Smith, 309 So.2d 853, 855-56 (Miss.1975). See also O'Neill, 551 So.2d at 234; Dailey v. Houston, 246 Miss. 667, 684-85, 151 So.2d 919, 927 (1963); Hoffman v. Smith, 61 Miss. 544, 547 (1884).
¶ 16. Regardless of the confusion in the chancellor's decision to award or deny attorney's fees in this instance, we find that an award of attorney's fees was not proper. Although the chancellor's last order denied attorney's fees, the fact remains that he did, at one point, award to both parties a specific amount of attorney's fees. We do note that the record contains no evidence where either party attempted to prove his/her attorney's fees and whether such fees were reasonable. If we were to conclude that the chancellor's orders were conflicting and remanded for the chancellor to delineate his findings concerning attorney's fees, it would still not be proper for the chancellor to award attorney's fees. In order to avoid any confusion, we reverse and render in regards to the issue of attorney's fees, finding that such an award is not proper.
¶ 17. THE JUDGMENT OF THE HANCOCK COUNTY CHANCERY COURT IS AFFIRMED IN PART, REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANTS AND ONE-HALF TO THE APPELLEES.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.