949 So.2d 774 (2006)
Ricky C. MILES And Christy M. Young, Appellants
v.
Tony L. MILES, Appellee.
No. 2005-CA-00158-COA.
Court of Appeals of Mississippi.
June 27, 2006.
Rehearing Denied November 21, 2006.
*776 Jan R. Butler, Eupora, Attorney for Appellants.
Dewitt T. Hicks, Columbus, Attorney for Appellee.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
ROBERTS, J., for the Court.

FACTS
¶ 1. H.C. Miles, Jr. and Mattie Gray Miles lived in Webster County, Mississippi. They had three children; Ricky, Christy, and Tony. The Miles' three children grew up on approximately 120 acres of real property.[1]
¶ 2. The GM & O railroad owned a right-of-way across the Miles' property. In effect, that right-of-way divided the Miles' property into two parcels. The eastern parcel had frontage access to Highway 15. The Miles' home was on that forty acre eastern parcel. Additionally, Mr. Miles built a shop on the eastern parcel and conducted his carpentry business out of that shop. The western parcel contained approximately eighty acres. There were no structures on the western parcel. However, there was unevenly distributed timber on the western parcel.
¶ 3. Over time, Ricky moved to Tennessee and Christy moved to Maryland. Tony remained near his parents. In 1986, Mr. and Mrs. Miles deeded 2.02 acres of the eastern parcel to Tony. Tony built his home on that property. Tony also used Mr. Miles's shop to conduct his contracting business.
¶ 4. Mr. Miles died in 2001. After Mr. Miles died, Tony continued to use the shop. Predeceased by her husband, Mrs. *777 Miles passed away in the spring of 2003. Mrs. Miles left a will. According to her will, Mrs. Miles left her real property to Ricky, Christy, and Tony. That is, Ricky, Christy, and Tony each inherited an undivided one-third interest in the eastern and western parcels.

PROCEDURAL HISTORY
¶ 5. On June 30, 2003, Ricky and Christy filed a complaint for partition of land in the Webster County Chancery Court. Ricky and Christy named Tony as the sole defendant to their complaint. Ricky and Christy asked the chancery court to (a) partite the land into three equal parcels and (b) sell the ancestral home along with a small lot. On January 9, 2004, Ricky and Christy filed an amended complaint for partition. They did not alter their request to partite the land or to sell the ancestral home. However, they requested that the chancery court grant them access to the western parcel across the railroad right of way.
¶ 6. On January 20, 2004, Tony filed his answer to Ricky and Christy's original and amended complaints. Tony also filed a counter-complaint for partition. By his counter-complaint, Tony requested that the chancery court award him the entire east parcel. Tony also requested that the chancery court order him to pay owelty to Ricky and Christy to compensate them and to equalize the division.
¶ 7. On February 11, 2004, the chancery court conducted the first of many hearings. John Scott Tenhet, a land appraiser, testified that the market value of the eastern parcel was $100,000. That estimate included the ancestral home. E. Lynn Prine, a timber expert, testified that the value of the timber on the western parcel was approximately $106,795. Prine also divided the western parcel into three smaller tracts of 25.26 acres. According to Prine, tract 1A, the northern tract, contained $47,580 in timber, tract 2A, the middle tract, contained $22,314 in timber, and tract 3A, the southern tract, contained $36,901 in timber. Tenhet used Prine's timber estimate and concluded that the value of the western parcel was $144,000.
¶ 8. In June of 2004, Ricky and Christy agreed on a reciprocal transfer. Ricky gave Christy his undivided one-third interest in the western parcel. In exchange, Christy gave Ricky her undivided one-third interest in the eastern parcel. Afterwards, Ricky owned a two-thirds interest in the eastern parcel, Christy owned a two-thirds interest in the western parcel, and Tony owned a one-third interest in both the eastern and western parcels.
¶ 9. On August 20, 2004, the chancellor filed an opinion and ordered that it would be possible to partite the land. The chancellor directed Ricky and Christy to submit three potential commissioners. Likewise, the chancellor directed Tony to submit three potential commissioners. The chancellor also instructed that the eastern parcel would be divided into two tracts. According to the chancellor, the special commissioners were to award one tract to Tony and that tract should include the land on which the ancestral home and the shop was located. The chancellor qualified that instruction. The special commissioners were only to award that tract to Tony "if such division [was] practicable." The chancellor also instructed the special commissioners to award the other tract of the eastern parcel to Ricky. As for the western parcel, the chancellor instructed the special commissioners to award one tract to Tony and one tract to Christy.
¶ 10. On September 30, 2004, the chancellor entered a judgment. According to the chancellor's judgment, the chancellor appointed three commissioners "to inspect the property and render a decision in accordance with the Opinion . . . regarding *778 whether the property can be partited in kind or whether a sale should be made with a division of the proceeds of the property."
¶ 11. On November 15, 2004, the special commissioners filed their report. The commissioners' report stated that the eastern parcel contained 35.41 acres and the western parcel contained 74.21 acres  109.62 acres total. The special commissioners agreed that both parcels could be partited in kind.
¶ 12. The commissioners' report stated that, as for the western parcel, Christy should receive 49.47 acres and Tony should receive 24.74 acres. As for the eastern parcel, the commissioners found that it was not "practical" to award Tony the tract that contained the ancestral home and the shop "because the value would be more than one-third of the total value of the East Parcel." To that end, the commissioners concluded that Ricky should receive the ancestral home and the shop and the 1.6 acres that surrounded it as well as an additional 13.47 acres of the eastern parcel. As for Tony's share of the eastern parcel, the commissioners concluded that Tony should receive 21.94 acres. The commissioners noted that Tony's suggested award "would include the property in front of his present home and run north."
¶ 13. On November 17, 2004, the chancellor filed an order and directed the parties that they must make their objections, if any, in writing and they must file them within five days. The order also instructed the parties to state why the commissioners' report should not be approved, confirmed and accepted. On November 22, 2004, Ricky and Christy filed objections to the special commissioners' report.
¶ 14. The chancellor did not conduct a hearing on Ricky and Christy's objections. Regardless, on December 15, 2004, the chancellor issued her final judgment and her judgment confirming the special commissioners' report. The chancellor added a slight modification to the special commissioners' report. The chancellor gave Ricky an easement for ingress and egress over Tony's tract on the east parcel.
¶ 15. On December 28, 2004, Ricky and Christy filed a postjudgment motion for new trial or, alternatively, to alter or amend the judgment. On January 4, 2005, the chancellor entered an order and denied Ricky and Christy's postjudgment motions. The chancellor overruled Ricky and Christy's postjudgment motions without conducting a hearing. On January 15, 2005, Ricky and Christy filed their notice of appeal.

STANDARD OF REVIEW
¶ 16. "The standard of review for property partition cases is whether this Court finds manifest error in the decision of the chancellor, only then will this Court reverse the findings of the chancellor." In re Last Will and Testament of Lynn, 878 So.2d 1052(¶ 11) (Miss.Ct.App.2004). "A chancellor is afforded wide discretion in fact finding in determining whether to confirm the special commissioner's report and to authorize the special commissioner's deed." Hataway v. Nicholls, 893 So.2d 1054(¶ 18) (Miss.2005) (internal quotations omitted). "This Court will not disturb findings of the chancellor unless the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard." Necaise v. Ladner, 910 So.2d 699(¶ 5) (Miss.Ct.App.2005).

ANALYSIS
I. DID THE CHANCERY COURT ERR WHEN IT DID NOT CONDUCT A HEARING ON RICKY'S AND CHRISTY'S OBJECTIONS TO THE SPECIAL COMMISSIONERS' REPORT?
¶ 17. Ricky and Christy claim that the chancellor erred when she did not conduct *779 a hearing on their objections to the special commissioners' report. Ricky and Christy concede that nothing in Mississippi's partition statutes requires a chancellor to conduct such a hearing. However, Ricky and Christy cite Section 11-21-25 of the Mississippi Code and its provision that the chancellor has authority to set aside the special commissioners' report upon a showing of good cause. Specifically, that Section states:
The special commissioners shall make to the court, at the first term held after they have acted, or else as the court shall direct, a full report, in writing, of their proceedings, which, on exceptions filed at any time before its confirmation, for good cause shown may be set aside by the court, and other special commissioners appointed, or the same special commissioners may be directed to make a new partition; or the partition may be modified by the court in any particular, and be confirmed as thus modified.
Miss.Code Ann. § 11-21-25 (Rev.2004). Still, nothing in Section 11-21-25 mandates conducting a hearing on objections to the special commissioners' report.
¶ 18. Ricky and Christy also cite M.R.C.P. 53 and claim that "[t]he language of Rule 53 certainly suggests that a court should conduct a hearing upon objections to the commissioners' report." According to M.R.C.P. 53(g)(2):
The court shall accept the master's findings of fact unless manifestly wrong. Within ten days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as provided by Rule 6(d). The court after hearing may adopt the report or modify it or may reject it in whole or in any part or may receive further evidence or may recommit it with instructions.
Ricky and Christy draw particular attention to the language that gives the chancellor the authority to adopt the special commissioners' report, reject it, modify it, receive further evidence, or recommit it "after hearing." However, M.R.C.P. 53(g)(2) also states that the party who submits written objections must submit such objections in the form of a motion if they desire "action upon the report." Action upon the special commissioners' report is also conditioned "upon notice as provided by Rule 6(d)." M.R.C.P. 53(g)(2). Rule 6(d) directs that notice of a hearing on a motion "shall be served not later than five days before the time fixed for the hearing." As such, M.R.C.P. 53(g)(2) suggests that the chancellor must conduct a hearing when a party submits objections in the form of a motion and when a party complies with the rules on noticing a hearing. Ricky and Christy did not submit their objections in the form of a motion and did not notice a hearing. Rather, they submitted a document styled "OBJECTION TO SPECIAL COMMISSIONERS [sic] REPORT" and asked the chancellor to refuse to adopt the special commissioners' report in lieu of what they considered to be a partition method more favorable to them. What is more, M.R.C.P. 7(b)(1) states that "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." M.R.C.P. 7(b)(1) goes on to state that "[t]he requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion." Ricky and Christy simply objected to the special commissioners' recommendations and suggested alternative partition methods *780 commensurate with their position. The "objections" document certainly failed to include a written notice of a hearing and did not even include a request for a hearing. Nothing in Ricky and Christy's "objections" document placed the chancellor on notice that Ricky and Christy desired a hearing on their objections. Even if we relax the requirements of Rules 53(g)(2), 6(d), and 7(b)(1) to ensure that we do not favor form over substance, a chancellor has "wide discretion in fact finding in determining whether to confirm the special commissioner's report." Hataway, 893 So.2d at (¶ 18). Under M.R.C.P. 53(g)(2), the chancellor was required to accept the special commissioners' findings of fact "unless manifestly wrong." Considering the particular circumstances of this case, we cannot find that the chancellor abused her discretion in failing to conduct a hearing on Ricky and Christy's objections.
¶ 19. Ricky and Christy cite Prostak v. Prostak, 257 N.J.Super. 75, 607 A.2d 1349 (Ct.App.Div.1992) as authority for the proposition that the chancellor should have conducted a hearing on their objections. In Prostak, the Appellate Division of the New Jersey Superior Court held that the chancery division of the superior court erred when it did not conduct a hearing on a party's motion to suppress the special commissioners' report. Id. at 1353. Obviously, we are not bound by New Jersey law. Even if we consider it instructive, there is a distinguishing feature. The party that requested the hearing in Prostak filed his objections in the form of a motion to suppress and the party's attorney requested a hearing. Id. at 1351. Here, Ricky and Christy did not request a hearing and did not file their objections in the form of a motion.
¶ 20. Ricky and Christy also cite Green v. Marek, 2002 (Tex.Ct.App.2002), an unpublished opinion from the Texas Court of Appeals. Again, we are not bound by Texas law, especially in the form of an unpublished opinion that has no precedential value  not even in Texas, much less in Mississippi. For the sake of argument, Green held that a Texas district court erred when it confirmed a report from special commissioners incident to a partition action. Green found error because the aggrieved party did not get a copy of the special commissioners' report and did not receive notice of the hearing at which the district court approved and confirmed the special commissioners' report. Green found that the aggrieved party did not get an opportunity to file objections to the special commissioners' report. Here, Ricky and Christy do not claim that they did not receive the special commissioners' report. What is more, they not only had an opportunity to file objections to the special commissioners' report, they actually filed their objections. We find no error equivalent to that in Green.
¶ 21. For purposes of clarity, we do not suggest that a party to a partition action has no right to a hearing. Rather, we find that a party has a right to a hearing on their objections to a special commissioners' report where the party that seeks the hearing follows the requirements set forth in Rules 53(g)(2), 6(d), and 7(b)(1). To be sure, we do not find that, because Ricky and Christy did not include the word "motion" in the style of their objection, they were not entitled to a hearing on their objections. Rather, we find that, because Ricky and Christy did not follow the necessary procedural requirements to even place the chancellor on notice that they desired a hearing, the chancellor did not abuse her discretion in failing to conduct one. We find no reversible error and no violation of Ricky and Christy's due process rights.
*781 II. DID THE CHANCELLOR ERR WHEN SHE CONFIRMED THE SPECIAL COMMISSIONERS' REPORT WHERE THE SPECIAL COMMISSIONERS DID NOT FOLLOW THE CHANCELLOR'S ORDERS?
¶ 22. Ricky and Christy submit that the special commissioners failed to follow the chancellor's instructions in that they did not award Tony the tract of land on the eastern parcel that contained the ancestral home and the shop. Ricky and Christy note that the chancellor instructed the special commissioners to award the ancestral home and shop to Tony Miles "if such division is practicable." The special commissioners' report stated that it was not "practical" to award Tony the ancestral home and the shop. Ricky and Christy claim that the chancellor erred when she confirmed the special commissioners' report because it was practicable to award Tony the ancestral home and the shop. According to Ricky and Christy, such an award was practicable because, even if Tony received an inequitable portion of the eastern parcel, the chancellor could have remedied that inequity through owelty. Ricky and Christy also distinguish the chancellor's instruction that the special commissioners award Tony the ancestral home if "practicable" and the special commissioners' response that such an award was not "practical."
¶ 23. As for the difference between the chancellor's use of the word "practicable" and the special commissioners' use of the word "practical," this appears to be nothing more than a scrivener's error. The substantial use of the word "practical" distinguished from the substantial use of the word "practicable" is negligible when examined in the context of the effect. It is clear from the context of the special commissioners' report that the commissioners felt as though they could not equitably award Tony the ancestral home because of Tony's right to one-third of the eastern parcel versus Ricky's right to two-thirds of that parcel. In any context, we cannot find that the difference in the two words rises to the level of clear or manifest error.
¶ 24. Regarding whether the chancellor erred when she confirmed the special commissioners' report and did not modify the report to award Tony the ancestral home with instructions to pay owelty to Ricky, we can find no reversible error in that decision. "A partition in kind is the preferred method of partition of property under Mississippi law." Fuller v. Chimento, 824 So.2d 599(¶ 8) (Miss.2002). As mentioned, we are bound to allow a chancellor wide discretion in determining whether to confirm the special commissioner's report. Hataway, 893 So.2d at (¶ 18). That the chancellor did not award Tony the ancestral home combined with an obligation to pay owelty to Ricky is a matter within the chancellor's wide discretion.
III. DID THE CHANCELLOR ERR WHEN SHE CONFIRMED THE SPECIAL COMMISSIONERS' REPORT WHERE THE SPECIAL COMMISSIONERS EMPLOYED THE DEFENDANT'S EXPERT AS THE SURVEYOR?
¶ 25. In this issue Ricky and Christy note that the special commissioners used a survey prepared by Mr. Ed Springer of Springer Engineering. Ricky and Christy submit that it was improper to use Springer's survey because Tony was prepared to call Springer as an expert witness. According to Ricky and Christy, "[t]here was no way that [Springer] could have been truly impartial."
¶ 26. There can be no doubt that the special commissioners were entitled to employ *782 a surveyor to assist them with their duties and that such a surveyor should act impartially. See Miss.Code Ann. § 11-21-19 (Rev.2004). It is certainly foreseeable that a surveyor listed as one party's expert witness could be impartial. However, in this case, Ricky and Christy present no evidence of an inequitable result based on Springer's survey. Bare allegations of impropriety, without more, are insufficient to overcome the discretion afforded to the chancellor. At the very least, such a complaint should be accompanied by more than a generalized allegation to amount to reversible error. Here, we only have an allegation, a simple conclusion. Without more, we will not find reversible error.
IV. DID THE CHANCELLOR ERR WHEN SHE PARTITED PROPERTY ACCORDING TO THE FENCE LINE RATHER THAN THE DESCRIPTION WITHIN THE DEED?
¶ 27. Ricky and Christy claim that Springer's survey omitted portions of Mrs. Miles's real property. According to Ricky and Christy, because Springer's survey failed to account for that omitted property, it was impossible to accurately and equitably partition the property. The discrepancy in property stems from a variation between the language of the deed by which Mr. and Mrs. Miles acquired the property in 1959 and a fence line around the western parcel. According to Springer's survey, the fence line around the western parcel does not follow the actual boundary line. Instead, the fence line encroaches over the northern boundary of the western parcel and then falls short of the western and southern boundaries of the western parcel. Springer's survey states that the 1959 deed credited the western parcel with 80.49 acres, while the boundary inside the barbed wire fence surrounding the western parcel contains 74.21 acres.
¶ 28. In the chancellor's August 2004 opinion, the chancellor confirmed that the property contained approximately 118 acres. The chancellor then stated that the eastern parcel contained approximately thirty-eight acres and the western parcel contained approximately seventy-eight acres. Even accounting for approximation, that amounts to 116 acres. In the special commissioners' report, the special commissioners stated that the eastern parcel contained 74.21 acres and the western parcel contained 35.41 acres. That amounts to 109.62 acres.
¶ 29. According to Ricky and Christy, Springer "created totally new and more limited land boundaries for both parcels." Ricky and Christy suggest that Springer did not conduct his survey within the calls of the deed from which Mr. and Mrs. Miles derived their title. They also suggest that Springer "merely set the boundaries based on present fence lines."
¶ 30. Tony claims that Ricky and Christy waived this allegation when they failed to include it in their objections to the special commissioners' report. Ricky and Christy admit that they did not include this allegation in their objections, but they submit that they preserved the issue when they included it in their posttrial motion titled "Post Judgment Motion Pursuant to Rule 59 MRCP for a New Trial, or Alternatively, to Alter or Amend the Judgment and (sic) Pursuant to Rule 60 MRCP."[2] Alternatively, Tony submits that the chancellor included the entire 123 acres in her award. Tony claims that Christy's 49.47 acres, plus Ricky's 13.47 acres, in addition to Tony's 46.68 acres amounts to 123.09 *783 acres. Tony is incorrect. 49.47 plus 13.47 plus 46.68 equals 109.62  not 123.09.
¶ 31. Ricky and Christy did not object to the special commissioners' using the fence line as the proper boundary. In effect, Ricky and Christy failed to submit a contemporaneous objection. Their failure is tantamount to waiver on appeal. Accordingly, we find this issue to be procedurally barred.
¶ 32. Procedural bar notwithstanding, this issue is one of first impression. There is an obvious discrepancy between Springer's survey and the fence line. So, the question is whether the chancellor should have partited the property according to the language of the deed or the fence line.
¶ 33. We find that the chancellor did not err. The Springer survey preceded the commissioners' report. The commissioners relied on the Springer survey when they recommended a suitable partition. No party disputed that Mr. and Mrs. Miles treated the fence line as the true and correct boundaries to the western parcel. As such, the surveyor, the commissioners, and the chancellor all sought to partite the property that Mr. and Mrs. Miles claimed as their own. Where a chancellor found that a surveyed line was the true boundary between the parties and that the fence had not been recognized and considered by the parties the boundary line, the chancellor did not err when he found that the appellants did not have title to the disputed property. Jenkins v. Thweatt, 42 So.2d 95 (Miss.1949). Here, the chancellor found that the fence had been recognized and considered to be the boundary line.
¶ 34. Naturally, this opinion is in no way to be construed as a determination that Mr. and Mrs. Miles, and now Christy and Tony, respectively, either adversely possessed that property which encroaches the northern boundary survey line or lost property because an adjacent landowner adversely possessed that property short of the western and southern boundary survey lines. Due process requires that those adjacent landowners have notice and an opportunity to be heard prior to any such resolution of those property rights. Those are questions for a later date. Christy and Tony still have the right to adjudicate those property rights. Here, however, we affirm the chancellor's decision to partite that property that all parties conceded to be the proper boundaries to the western parcel.
V. DID THE CHANCELLOR ERR WHEN SHE ACCEPTED THE SPECIAL COMMISSIONERS' VALUATION OF THE SHOP AND ITS SURROUNDING 1.6 ACRES?
¶ 35. The special commissioners valued the shop and its surrounding 1.6 acres at $7,500. According to Ricky and Christy, the commissioners had no basis to conclude on that value because no one presented any evidence regarding the valuation of the shop or the valuation of the 1.6 acres that surrounds it. Tony's entire argument on this issue is that, "[t]he conservative value assigned for the shop and 1.6 acres clearly lies within the discretionary authority of the capable Special Commissioners, who unanimously determined this value."
¶ 36. The chancellor has substantial discretion, but property appraisal is not a part of that discretion. Likewise, the special commissioners must have an evidentiary basis for the valuation they utilize to effect their partition report. It is improper to value property where there is no evidentiary basis for that valuation. See, e.g., Bishop v. Miss. Transp. Comm'n, 734 So.2d 218(¶ 11) (Miss.Ct.App.1999).
*784 ¶ 37. The evidence shows that Tenhet submitted an appraisal and that it was admitted into evidence. Tenhet's appraisal placed a value on the shop. Tenhet's appraisal also included a per acre valuation. Accordingly, there was an evidentiary basis for the valuation of the shop and the surrounding property.
¶ 38. THE JUDGMENT OF THE WEBSTER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] As we will discuss below, there are variations in the precise acreage involved in this partition action.
[2] Rule 60 cannot be the basis for a motion to alter or amend a judgment. A motion to alter or amend a judgment must be filed pursuant to M.R.C.P. 59(e).