IRVING, P.J.,
for the Court:
¶ 1. On October 4, 2010, the Bank of Okolona filed a complaint for interpleader against Calvary Baptist Church, Reverend Clarence Frison, Robert Montgomery, and William Gettis. In its complaint, the bank explained that dissension within the church had resulted in two factions, each claiming ownership of the monies deposited in the church’s bank account. The bank could not determine the rightful owner of the church’s funds, so it sought to deposit the account balance into the registry of the Chickasaw County Chancery Court.
¶2. The chancery court ordered that, the account balance, $28,669.73 be deposited into the court’s registry until a determination could be made regarding ownership of the funds. The church, by and through its deacons, Montgomery and Gettis, filed a cross-claim against Rev. Frison, seeking an injunction that would prevent him from occupying the pulpit or otherwise representing himself as the church’s pastor.
¶ 3. The chancery court appointed a special master to assist the church in holding a vote to determine whether to retain or dismiss Rev. Frison as the church’s pastor. On May 28, 2011, the church’s members cast their ballots and voted to retain Rev. Frison as pastor. The special master certified the vote, and the chancery court entered its final judgment finding that the church had voted to retain Rev. Frison as pastor and ordering that the special master be compensated $5,167 for her services. Following the entry of the court’s judgment, Montgomery and Gettis filed an objection to the special master’s certification of the vote. However, they never noticed a hearing on their objections. Additionally, they failed to file any post-trial motions challenging the chancery court’s final judgment.
¶ 4. Nonetheless, Montgomery and Get-tis appeal and argue: (1) the chancery court erred in failing to hold a hearing on their objections to the special master’s report; (2) the chancery court failed to adhere to the requirements of Rule 53(g) of the Mississippi Rules of Civil Procedure; (3) the special master exceeded her authority in conducting the vote; and (4) the compensation paid to the special master is unreasonable.
¶ 5. Finding no error, we affirm.
FACTS
¶ 6. In 2007, Rev. Frison became the pastor of Calvary Baptist Church. On September 1, 2010, Montgomery and Get-tis met with Rev. Frison and informed him that they intended to dismiss him for the misuse of church property and funds, failure to communicate with the deacons, and ineffectiveness as a spiritual leader. They gave Rev. Frison the option of resigning from his position in lieu of termination. According to Montgomery, Rev. Frison resigned, relinquished his keys to the church, and vacated the premises. Rev. Frison denies that he resigned.
¶ 7. On September 2, 2010, Montgomery and Gettis called a church meeting where they advised the congregation that Rev. Frison had resigned and declared the pulpit vacant. However, Rev. Frison later returned to the church premises and continued to represent himself as the church’s pastor. On September 5, 2010, members of the congregation called an emergency meeting where, by vote of the members present, they reinstated Rev. Frison as pastor and dismissed Montgomery and Gettis as deacons. On September 10, 2010, Montgomery and Gettis gave Rev. *1189 Frison written notice of his dismissal. On September 27, 2010, church members called another meeting and voted to remove Rev. Frison as pastor.
¶ 8. Thereafter, the church published notices in two local newspapers announcing a meeting on October 9, 2010, where members could vote to affirm the dismissal of Rev. Frison and to authorize the deacons to file any necessary legal action against him. According to the minutes from the meeting, there was a unanimous vote to authorize Montgomery and Gettis to file suit to enjoin Rev. Frison from entering the church premises and from representing himself as pastor of the church. The minutes of the meeting do not indicate the results of the vote to affirm Rev. Frison’s dismissal. However, in a letter dated October 18, 2010, Montgomery and Gettis informed Rev. Frison that the church had voted to dismiss him as pastor on October 9, 2010.
¶ 9. In a letter dated October 9, 2010, Rev. Frison dismissed Gettis as a deacon and as a member of the church. According to the chancery court’s final judgment, Montgomery received a similar letter; however, the letter is not in the record before this Court. Nevertheless, Leon Lowery, a member of the church, testified that the church voted to dismiss Montgomery and Gettis as members in October 2010.
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 11. An appellate court “will not interfere with or disturb a chancellor’s findings of fact unless those findings are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Pilgrim Rest Missionary Baptist Church v. Wallace, 835 So.2d 67, 71 (¶ 7) (Miss.2003) (citations omitted).

1. Right to a Hearing

¶ 12. Montgomery and Gettis contend that the chancery court erred when it failed to hold a hearing on their objections to the special master’s vote certification. In support of their contention, the deacons point to Rule 53(g)(2) of the Mississippi Rules of Civil Procedure. Rule 53(g)(2) provides:
The court shall accept the master’s findings of fact unless manifestly wrong. Within ten days after being served with notice of the filing of the report[,] any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as provided by Rule 6(d) [of the Mississippi Rules of Civil Procedure ]. The court after hearing may adopt the report or modify it or may reject it in whole or in any part or may receive further evidence or may recommit it with instructions.
(Emphasis added). The deacons read the final sentence of the rule as requiring the court to hold a hearing whenever a party files objections to the special master’s report. However, their interpretation fails to consider the preceding sentence, which requires the objecting party to notice a hearing on his objections in accordance with Rule 6(d).[1]
*1190 ¶ 13. On June 14, 2011, Gettis and Montgomery filed their objections to the special master’s vote certification. In their prayer for relief, the deacons asked the chancery court to review their objections and “upon a hearing on [the] same,” reject the results of the vote held by the special master. However, there is no indication in the record that they noticed a hearing on their objections as required by Rule 53(g)(2).[2]
¶ 14. This Court has previously considered and rejected the exact argument made by the deacons. See Miles v. Miles, 949 So.2d 774, 778-79 (¶ 17) (Miss.Ct.App. 2006). In Miles, parties to a partition action filed objections to the special commissioner’s report. Id. at 778 (¶ 13). However, they “failed to include a written notice of a hearing and did not even include a request for a hearing.” Id. at 780 (¶ 18). On appeal, they argued that the chancery court erred in failing to hold a hearing on their objections, citing Rule 53. Miles, 949 So.2d at 778-79 (¶¶ 17-18). This Court explained that the right to a hearing is conditioned upon compliance with the procedural requirements of Rule 53(g). Miles, 949 So.2d at 779 (¶ 18). Therefore, because the objections filed by the parties did not include a written notice of a hearing, this Court held ' that the chancery court did not err in failing to conduct a hearing. Id. at 780 (¶ 21).
¶ 15. Because Montgomery and Gettis did not seek a hearing on their objections to the special master’s report in accordance with the procedure set forth under Rule 53(g)(2) and Rule 6(d), the chancery court did not err in failing to conduct a hearing. This issue is without merit.

2. Chancery Court’s Deviation from, Rule 53(g)

¶ 16. Montgomery and Gettis argue that the chancery court failed to adhere to Rule 53(g)’s other requirements. Specifically, the deacons complain that the chancery court erred in adopting the special master’s report prior to the expiration of the ten-day period for filing objections. Additionally, they argue that the chancery court erred in ordering that the special master’s findings would be final without a valid stipulation from the parties.
¶ 17. As stated above, Rule 53(g)(2) requires parties to file objections to the special master’s report “[w]ithin ten days after being served with notice of the filing of the report....” The special master served her report via e-mail on May 31, 2011. Montgomery and Gettis served their objections via e-mail on June 8, 2011. However, as explained above, they failed to serve the chancellor or otherwise notify her of their objections to the special master’s report. The chancellor entered her final judgment on June 8, 2011 — the same day that the deacons served their objections.
¶ 18. The deacons assert that the chancery court committed reversible error by entering its final judgment prior to the expiration of the ten-day period for filing objections. However, they cite no authori *1191 ty for their argument. Furthermore, as discussed above, the deacons failed to bring their objections to the chancery court’s attention or file any post-trial motions challenging the chancery court’s final judgment. It is well established that “issues that are not raised at the trial court and which the trial court had no opportunity to rule on cannot be raised for the first time in the appellate court.” Corporate Mgmt, Inc. v. Greene Cnty., 23 So.3d 454, 462 (¶ 22) (Miss.2009) (citing Fitch v. Valentine, 959 So.2d 1012, 1021 (¶ 19) (Miss. 2007)). Consequently, we decline to address this issue.
¶ 19. Montgomery and Gettis also take issue with the chancery court’s order appointing the special master. In the order, the court stated that the vote conducted by the special master would be final. The deacons contend that this statement was improper under Rule 53(g)(3) of the Mississippi Rules of Civil Procedure, which provides:
The effect of a master’s report is the same regardless of whether the parties have consented to the reference; however, when the parties stipulate that a master’s finding of fact shall be final, only questions of law arising upon the report shall thereafter be considered. The deacons assert that they never stipulated that the special master’s vote would be final. However, they failed to raise this issue before the chancery court.[3] As such, we decline to address this issue.

3. Objections to Special Master’s Vote

¶ 20. Montgomery and Gettis contend that the special master exceeded her authority when she allowed absentee voting. The deacons raised this issue in their objections to the special master’s report. However, as discussed above, the deacons took no action to notice a hearing on their objections. Therefore, they have waived their objections to the vote conducted by the special master. See Powers v. Tie-bauer, 939 So.2d 749, 752 (¶7) (Miss.2005) (affirming the chancery court’s finding that failure to notice a motion for a hearing or otherwise pursue adjudication of a motion constituted abandonment of a claim).
¶ 21. Montgomery and Gettis also argue that the special master erred in using church membership lists that did not comply with the chancery court’s orders.[4] However, this issue was not raised as an objection to the special master’s report or otherwise brought before the chancery court. Accordingly, we decline to address this issue.

I. Attorney’s Fees

¶ 22. Montgomery and Gettis also argue that the amount of attorney’s fees awarded to the special master is unreasonable. As stated above, the chancery court awarded the special master $5,167 as compensation for her services. However, the deacons failed to challenge the award of attorney’s fees in a post-trial motion or otherwise bring the issue before the ehan- *1192 eery court for review. Instead, they urge this Court to consider the issue under the doctrine of plain error.
¶ 23. “Plain-error review is appropriate when (i) a party has failed to preserve an error for appellate review and (ii) a substantial right is affected.” In re Guardianship of Duckett, 991 So.2d 1165, 1188 (¶ 44) (Miss.2008) (citing State Highway Comm’n of Miss. v. Hyman, 592 So.2d 952, 957 (Miss.1991)). The Mississippi Supreme Court has previously held that “[t]he issue of attorney’s fees, although not insignificant, is not one where the interest of substantial justice is at stake.” Chamblee v. Chamblee, 637 So.2d 850, 866 (Miss.1994) (internal quotations omitted). As such, we decline to review the reasonableness of the attorney’s fees awarded to the special master under the plain-error doctrine.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF CHICKASAW COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.

. Rule 6(d) provides, in pertinent part:
A written motion, other than one which may be heard ex parte, and notice of the hearing thereof, shall be served not later than five days before the time fixed for the hearing, unless a different period is fixed by these rules or by order of the court.

. In fact, based on our review of the record, it does not appear that the chancellor even knew that the deacons had filed objections to the special master's report. This Court has previously stated that "a party making a motion must follow up that action by bringing it to the attention of the judge and by requesting a hearing upon it.” Anderson v. McRae’s, Inc., 931 So.2d 674, 678 (¶ 10) (Miss.Ct.App. 2006) (internal quotations and citations omitted). The deacons served their objections to opposing counsel and the special master via e-mail on June 8, 2011. However, the chancellor is not listed on the certificate of service. The deacons’ objections were not filed with the chancery clerk until June 14, 2011, which was after the filing of the chancellor's final judgment on June 8, 2011. As previously stated, Montgomery and Gettis did not file any post-trial motions.

. On May 5, 2011, the deacons filed a motion seeking relief from the chancery court's order appointing the special master. However, in their motion, they only challenged the court’s directions regarding the compilation of the church’s membership lists. They did not challenge the court’s statement that the election results would be final.

. The chancery court ordered each church faction to submit a membership list to the special master, which contained "the last known address of the member, the date the member joined the Churchf,] and the age of the member.” In her certification of the vote, the special master noted that neither party submitted a list that complied with the chancery court’s order. Nonetheless, the special master proceeded with the election process, and sent notice of the vote by regular mail to the members whose names appeared on both lists.